



Search for Cases by: Select Search Method...

| Judicial Links | eFiling | Help | Contact Us | Print | GrantedPublicAccess  Logoff JTNEELY2020 |

## 2022-CC09383 - ERB LEGAL INVESTMENTS V QUINTESSA MARKETING LLC (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending ○ Ascending

Display Options: All Entries

---

**08/17/2020** ☐ **Summ Issd- Circ Pers Serv O/S**
Document ID: 20-SMOS-2981, for QUINTESSA MARKETING LLC.

**08/11/2020** ☐ **Jury Trial Scheduled**
Scheduled For: 01/25/2021;  9:00 AM ;  REX M BURLISON;  City of St. Louis

**08/05/2020** ☐ **Alias Summons Requested**
Request for Summons.
**Filed By:** EDWARD RYAN BRADLEY
**On Behalf Of:** ERB LEGAL INVESTMENTS

**08/03/2020** ☐ **Motion Special Process Server**
Motion for Special Process Server.
**Filed By:** EDWARD RYAN BRADLEY
**On Behalf Of:** ERB LEGAL INVESTMENTS

☐ **Amended Motion/Petition Filed**
Amended Petition.
**Filed By:** EDWARD RYAN BRADLEY
**On Behalf Of:** ERB LEGAL INVESTMENTS

**07/23/2020** ☐ **Filing Info Sheet eFiling**
**Filed By:** EDWARD RYAN BRADLEY

☐ **Pet Filed in Circuit Ct**
Petition; Exhibit 1.
**Filed By:** EDWARD RYAN BRADLEY
**On Behalf Of:** ERB LEGAL INVESTMENTS

☐ **Judge Assigned**

---

Case.net Version 5.14.0.18                    Return to Top of Page                    Released 09/01/2020

EXHIBIT D



# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>REX M BURLISON | Case Number: 2022-CC09383 | M HUECKEL<br>SPECIAL PROCESS<br>SERVER |
| Plaintiff/Petitioner:<br>ERB LEGAL INVESTMENTS | Plaintiff's/Petitioner's Attorney/Address:<br>EDWARD RYAN BRADLEY<br>1424 WASHINGTON AVE.<br>SUITE 300<br>vs. ST. LOUIS, MO 63103 | |
| Defendant/Respondent:<br>QUINTESSA MARKETING LLC | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp) |
| Nature of Suit:<br>CC Breach of Contract | | |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   QUINTESSA MARKETING LLC
                                        Alias:

**7919 MIDAMERICA BLVD**
**#230**
**OKLAHOMA CITY, OK 73135**

**SPECIAL PROCESS SERVER**

*COURT SEAL OF*

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**August 17, 2020**

_____          _____
Date                                                      Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                        Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                          ☐ the judge of the court of which affiant is an officer.
*(Seal)*              ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                          ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| Service Fees | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____miles @ $_____ per mile) |
| **Total** | $_____ |

See the following page for directions to officer making return on service of summons.

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

Electronically Filed - City of St. Louis - August 05, 2020 - 09:57 AM

IN THE CIRCUIT COURT OF ST. LOUIS CITY
STATE OF MISSOURI

| | | |
|---|---|---|
| ERB LEGAL INVESTMENTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 2022-cc09383 |
| QUINTESSA MARKETING LLC, | ) | |
| SERVE: 7919 Mid America Blvd, #230 | ) | Division No. |
| Oklahoma City, OK 73135 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM REQUESTING SUMMONS</u>

COMES NOW Plaintiff, and request summons to be issued to Defendant, Quintessa Marketing, LLC at 7919 Mid America Blvd, #230, Oklahoma City, OK 73135 for service by the Special Process Server.

Dated this 5th day of August, 2020

Respectfully submitted,

By: /s/E. Ryan Bradley
    E. Ryan Bradly, #53777
    The Bradley Law Firm
    Attorney for Plaintiff
    1424 Washington Avenue, Ste 300
    St. Louis, MO 63103
    (314) 721-9111 (phone)
    (314) 255-2765 (fax)
    Ryan@thebradleylawfirm.com

Electronically Filed - City of St. Louis - August 03, 2020 - 10:47 AM

In the
# CIRCUIT COURT
## City of St. Louis, Missouri

ERB Legal Investments
_____
Plaintiff/Petitioner

vs.

Quintessa Marketing LLC
_____
Defendant/Respondent

August 3 2020
_____
Date

2022-cc09383
_____
Case number

_____
Division

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiff _____, pursuant
           Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of

Martin Hueckel      Po Box 160, St. Peters MO 63376     3142239053
_____
Name of Process Server      Address      Telephone

_____
Name of Process Server      Address      Telephone

_____
Name of Process Server      Address      Telephone

to serve the summons and petition in this cause on the below named parties.

SERVE:
Quintessa Marketing LLC
_____
Name
7919 Mid American Blvd #230
_____
Address
Oklahoma City, OK 73135
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:
**TOM KLOEPPINGER,** Circuit Clerk

By _____
Deputy Clerk
8/17/2020
_____
Date

/s/E. Ryan Bradley
_____
Attorney/Plaintiff/Petitioner
53777
_____
Bar No.
1424 Washington Ave, St. Louis, MO
_____
Address
314-721-9111
_____
Phone No.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:47 AM

**In the**

# CIRCUIT COURT

## City of St. Louis, Missouri

ERB Legal Investments

Plaintiff/Petitioner

vs.

Quintessa Marketing LLC

Defendant/Respondent

For File Stamp Only

August 3 2020

Date

2022-cc09383

Case number

Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff , pursuant

Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of

| Martin Hueckel | Po Box 160, St. Peters MO 63376 | 3142239053 |
| --- | --- | --- |
| Name of Process Server | Address | Telephone |
| | | |
| Name of Process Server | Address | Telephone |
| | | |
| Name of Process Server | Address | Telephone |

to serve the summons and petition in this cause on the below named parties.

SERVE:

Quintessa Marketing LLC

Name

7919 Mid American Blvd #230

Address

Oklahoma City, OK 73135

City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

Appointed as requested:

**TOM KLOEPPINGER,** Circuit Clerk

By_____

Deputy Clerk

_____

Date

/s/E. Ryan Bradley

Attorney/Plaintiff/Petitioner

53777

Bar No.

1424 Washington Ave, St. Louis, MO

Address

314-721-9111

Phone No.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:47 AM

**RULE 14 SPECIAL PROCESS SERVERS**

1. Any person appointed by the Court or the Circuit Clerk to serve process must have a license issued pursuant to this rule to serve process.

2. Licenses to serve process shall be issued by the Sheriff of the City of St. Louis if the applicant has met the following qualifications:

   a. Is twenty-one years of age or older;

   b. Has a high school diploma or an equivalent level of education;

   c. Has insurance coverage for any errors or omissions occurring in the service of process;

   d. Has not been convicted, pleaded guilty to or been found guilty of any felony, or of any misdemeanor involving moral turpitude; and,

   e. Has passed a training course for the service of process which shall be administered by the Sheriff of the City of St. Louis.

3. Each applicant for a process server license under the provisions of this rule shall provide an affidavit setting forth such person's legal name, current address, any other occupations and current telephone numbers.  Licensed process servers shall immediately notify the Sheriff of the City of St. Louis of any change in the above information, and the failure to do so shall constitute good cause for the revocation of such person's license.

4. The Sheriff of the City of St. Louis shall maintain a list of persons licensed to serve process pursuant to this rule, and shall make such list available to litigants upon request.

5. A photo identification card designed by the Sheriff of the City of St. Louis shall be issued in addition to the license.  No other identification will be allowed.  All licenses must be signed and approved by the Sheriff of the City of St. Louis and the Presiding Judge or his designee.

6. A license fee recommended by the Sheriff and approved by the Court En Banc shall be charged to cover the costs of compiling and maintaining the list of process servers and for the training of such process servers.  The license fees shall be made payable to the Sheriff of the City of St. Louis.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:47 AM

7. A license for service of process issued under this rule may be revoked by the Sheriff with the approval of the Presiding Judge or his designee, for any of the following reasons:

   a. Misrepresentation of duty or authority;

   b. Conviction, guilty plea or finding of guilty of any state or federal felony, or a misdemeanor involving moral turpitude;

   c. Improper use of the license;

   d. Making a false return; or

   e. Any other good cause.

   Provided, no service of process made by an appointed process server with a revoked license shall be void if the Court or Circuit Clerk made the appointment in good faith without knowledge of the license revocation.

8. Any person authorized to serve process may carry a concealed firearm as allowed by Section 506.145, RSMo, only while actually engaged in the service of process and only if the person has passed a firearms qualification test approved by a law enforcement agency; provided, however, that any licensed special process server may file a written waiver of the right to carry a concealed firearm and thereby avoid the requirements of firearm training and testing.  Any violation of this section shall be considered beyond the scope of the privilege to carry a concealed weapon that is granted by the appointment, and shall constitute good cause for the revocation of the license.

9. Applications for the appointment of a special process server shall be made on forms available in the offices of the Sheriff and Circuit Clerk.  Orders Appointing special process servers may list more than one licensed server as alternatives.

10. The licenses granted pursuant to this rule shall be good for two years.  Each person granted a license shall be required to reapply at the expiration of the license and shall be required to provide all the information required in the initial application, including a current police record check.

(Approved 9/28/92; amended 11/23/92; 5/31/95; 12/17/07)

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

**IN THE CIRCUIT COURT OF ST. LOUIS CITY**
**STATE OF MISSOURI**

| | |
|---|---|
| ERB LEGAL INVESTMENTS, LLC,　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　Plaintiff,　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　　　　) | Cause No. 2022-CC09383 |
| 　　　　　　　　　　　　　　　　　　　) | |
| QUINTESSA MARKETING, LLC,　　　　　) | Division No. |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　Defendant.　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |

<u>**AMENDED PETITION**</u>

**COMES NOW** Plaintiff, ERB Legal Investments, LLC, by and through the undersigned attorneys, and for the cause of action against Defendant, Quintessa Marketing, LLC states as follows to the Court:

1.　　　Plaintiff ERB Legal Investments LLC is a Missouri Corporation that operates as a law firm within the States of Missouri and Illinois.

2.　　　Defendant Quintessa Marketing, LLC is an Oklahoma Corporation that provides "bulk marketing" services for law firms throughout the United State, including Missouri, and touts itself as a "full service platform" in marketing for, screening, qualifying and signing "plaintiffs" involved in motor vehicle collisions for representation.

3.　　　Plaintiff and Defendant entered into a Contract attached as **Exhibit 1** wherein Defendant would provide its "bulk marketing" services for Plaintiff and provide its "full service platform" in marketing for, screening, qualifying and signing "plaintiffs" involved in motor

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

vehicle collisions for representation. Plaintiff incorporates all terms and conditions thereof as if fully set forth herein.

4.      Exhibit 1 was drafted by Defendant Quintessa.

5.      Plaintiff executed **Exhibit 1** on April 21, 2020, emailed it to Defendant on that same day and pre-funded the marketing account with $50,000.00.

6.      Defendant requested a copy of Plaintiff's retainer contract so that "Plaintiffs" could be retained on Plaintiff's retainer.

7.      Plaintiff provided a copy of its retainer contract to Defendant.

8.      Plaintiff gave Defendant limited authority to use said contingency fee contract to sign "plaintiffs" if and only if they met the minimum criteria called for in the contract.

9.      Plaintiff at all times herein was required to pre-fund its marketing account with Defendant.

10.     Indeed, Plaintiff's account was at all times pre-funded, meaning that Defendant had possession of unearned funds at all times.

11.     Defendant began tracking all individuals it made contact with on behalf of Plaintiff in a Google Document. The Google Document set up by Defendant was a real-time document wherein Quintesssa would communicate to Plaintiff the name of the "plaintiff" along with other basic information. While some of the information was straightforward, some was not. For instance, the document would change font color of some "plaintiffs" from black to red without any reference at to status. Some would be in yellow highlighting.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

12.    Plaintiff was only granted "read" access to said Google Document except for 2 functions: 1) a "disengage" button and 2) a note field.

13.    Shortly thereafter, Defendant began engaging "plaintiffs" by having them execute Plaintiff's contingency fee contract.

14.    One of the Defendant's duties under the contract was to prequalify all "plaintiffs" pursuant to the terms and conditions of **Exhibit 1**.

15.    It became immediately apparent that Defendant was not fulfilling its duties in ensuring that "plaintiffs" met minimum criteria before signing them to Plaintiff's contingency fee contract.

16.    In particular, Defendant would sign "plaintiffs" to Plaintiff's contingency fee contract that did not meet minimum criteria in one or more respects. Thus, they were not being pre-qualified by Defendant.

17.    Plaintiff, by and through its owner, brought the fact leads were not being properly pre-qualified to the attention of Lauren Mingee and Leo Mingee, the owners of Defendant.

18.    On May 14, 2020, Plaintiff's owner, Lauren Mingee and Leo Mingee had a telephone conversation wherein an audio recorded conversation took place wherein the parties discussed the fact Defendant was signing unqualified "plaintiffs" who did not meet minimum criteria as called for in **Exhibit 1**. In particular, Defendant was signing "plaintiffs" without verification of insurance. During that call, it was agreed that Plaintiff would help qualify for insurance, but that usually this takes far longer than 144 hours. Defendants stated that "extensions" for insurance would be granted and that it would not be a problem. At no time did Defendant state

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

that Plaintiff was required to "disengage" a case first in order to obtain an extension to qualify the case for insurance or take any specific actions in this regard.

19.    Immediately thereafter and in reliance upon this conversation, on May 14, 2020, Plaintiff emailed Defendant a new retainer contract to use in signing up "plaintiffs," which made clear that our representation of that plaintiff was conditioned upon and it was specifically amended to state: "You understand we are accepting your personal injury case on a contingency fee contract, subject to the terms and conditions below, based upon the understanding that a) you were not at fault in causing the crash, b) there is automobile insurance coverage (liability or uninsured motorist), c) that there is at minimum $1500 in property damage and d) that you have physical injuries for which you sought medical treatment within 14 days and are continuing to need medical treatment as a result of these injuries. We reserve the right to reject your case if any one of these factors is not applicable to your case and we will not charge you any fee."

20.    Despite Plaintiff sending the new contract to Defendant, Defendant continued to a) sign up "plaintiffs" that were not properly qualified on the old contract, b) emailing the case to Plaintiff and c) deducting monetary funds from Plaintiff's account. Defendant also continued to email unengaged "plaintiffs" and deducting monetary funds from Plaintiff's account.

21.    In some instances, Defendant would not sign a "plaintiff" on the retainer contract and instead simply email over unengaged individuals for Plaintiff's consideration. On those, Defendant never indicated if, how or when Plaintiff would or would not be charged for "plaintiffs" who were unengaged, but simply emailed for consideration. Moreover, the only button on the Google Document was to "disengage" a "plaintiff." From Plaintiff's perspective, since these

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

people were never engaged, there was nothing to disengage. Most importantly, Defendant never communicated that unengaged "plaintiffs" needed to be disengaged.

22.     Over the course of the next two months, Defendant continued to sign up both qualified and unqualified "plaintiffs" on the old retainer contract instead of the new one. The unqualified plaintiffs were sometimes a) in geographical areas that were not agreed to, or b) signed without any good faith belief there was insurance, or c) signed without any good faith belief they were not at fault, or d) signed without any good faith belief that property damage exceeded $1500.

23.     During this time, Plaintiff knew engaged plaintiffs needed to be disengaged within the Google Document within 144 hours for criteria *unrelated* to insurance. Plaintiff complied with this.

24.     In reliance upon the May 14, 2020 phone call, Plaintiff continued to accept dozens of engaged plaintiffs when there initially appeared to be no insurance available.

25.     In reliance upon the May 14, 2020 phone call, Plaintiff continued to work diligently on engaged plaintiffs to qualify them for insurance, which took more than 144 hours to properly vet, as was repeatedly explained to Defendant.

26.     During this time, Defendant never disclosed to Plaintiff it was taking money out of Plaintiff's pre-funded account for any engaged "plaintiffs" when insurance was still unverified after 144 hours.

27.     During this time, Defendant never disclosed to Plaintiff it required Plaintiff to first ask permission on a case-by-case basis to obtain its permission to qualify a case beyond the 144 hour mark.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

28.    During this time, Defendant lead Plaintiff to believe that Plaintiff was doing a service to both itself and Defendant by conducting a thorough and complete investigation for insurance, even if it took longer than 144 hours, by not disclosing that it was charging Plaintiff for those "plaintiffs" when the 144 hour mark hit.

29.    On June 3, 2020, Plaintiff's owner, Ryan Bradley emailed Lauren Mingee, the owner of Quintessa asking for clarification as to how disengagements were being handled on the Google Document. That email stated:

*Hi Lauren…. Can you LMK what the color coding on the excel sheet means?*

*RED I guess means disengaged.*

*How can we tell if these is one that we turned down, but it is still chargeable versus one that we TD that you agreed is not chargeable?*

*Thanks,*

*Ryan*

30.    Lauren Mingee nor anyone at Defendant Quintessa ever responded to the email referenced in paragraph 28.

31.    Defendant knew Plaintiff did not understand the disengagement policy, requested it clarify the policy, and despite this Defendant knowingly refused to clarify the policy.

32.    At no time whatsoever did Defendant explain it apparently wanted Plaintiff to use the Google Document to request extensions to verify insurance coverage.

33.    The Google Document did not even have functionality available to Plaintiff for any such extension request as there was no "extension" button.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

34.    At no time whatsoever did Defendant explain Plaintiff needed to "disengage" plaintiffs who were never "engaged" in the first place.

35.    On June 4, 2020, Plaintiff again emailed Quintessa about using the new contract that incorporated the minimum criteria to become a "plaintiff" and stated in that email: "*Can you guys check to make sure that you received the amended contract that I sent over three or four weeks ago? The old one is still being used and I would like to use the updated one. If you need me to send it again, I will. Thank you, ryan*"

36.    In response, Lauren Mcneil stated "Can you resend we can confirm we have it."

37.    On June 10, 2020, Plaintiff emailed Quintessa the new contract for the <u>third time</u>, stating: "Here are the 2 contracts I sent over …. Please use this."

38.    The new contracts were never used by Quintessa. Instead, Quintessa continued to use the old retainer contract to sign unqualified leads against Plaintiff's express directive not to do so, which did not contain the minimum case criteria agreed upon by Plaintiff and Defendant.

39.    Notably, Quintessa had the new contract with the agreed-upon minimum criteria but never expressed to Plaintiff that it disagreed with it.

40.    During the next month to 45 days, Quintessa continued to sign unqualified "plaintiffs" to Plaintiff's old contingency fee contract and refusing to clarify how it was handling disengagements and/or refunds for cases that turned out to be unqualified.

41.    Within the Google Document  Plaintiff was only granted limited functionality. Plaintiff could only click on a button to "disengage" a "plaintiff" if the case did not meet one or

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

more of the minimum criteria. However, after 144 hours, the button would not be functional. The only other functionality usable by Plaintiff was a "note" field.

42.    During this time, Plaintiff worked in good faith in an attempt to qualify engaged and unengaged plaintiffs, especially as to the exitance of insurance.

43.    During this time, Plaintiff was under no impression that it would be charged for any engaged or unengaged plaintiffs if it was determined there was no insurance more than 144 hours from the time the lead was sent to Plaintiff.

44.    During this time, Plaintiff believed it was helping both itself and Defendant by thoroughly vetting the case for insurance, which always took longer than 144 hours. In doing so, it created a "win-win" for both parties. Plaintiff got a qualified "plaintiff" and Defendant was able to charge Plaintiff.

45.    After Plaintiff conducted a thorough and exhaustive search for insurance, approximately 22 cases were determined by Plaintiff not to be qualified due to insurance reasons.

46.    Plaintiff requested "disengagement" from these 22 cases on various dates from Defendant by entering a "note" on the Google Document.

47.    Defendant did not respond to the notes entered by Plaintiff. Instead, In fact, the "notes" that were entered by Plaitniff requesting disengagement were often deleted by Defendant without explanation. Plaintiff would re-enter the note once again only to find the note would disappear without explanation by the Defendant.

48.    In addition to submitting disengagements through the portal, since Plaintiff was not getting responses from Quintessa about those disengagements, at times Plaintiff emailed

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

Defendant about disengagements from "plaintiffs" that did not meet minimum criterial, in particular for insurance or fault reasons beyond the 144 hour deadline after Plaintiff's due diligence was completed.

49.    Those emails were once again ignored by Defendant.

50.    During this time, Defendant Quintessa would not advise Plaintiff if it was or was not issuing disengagement credits through the Google Document nor the reasons for any of its decisions to reject a disengagement as required by the contract.

51.    During this time, Defendant kept signing, emailing and deducting from Plaintiff's pre-funded account money for "plaintiff" cases that it was not qualifying.

52.    Finally, after spending approximately $250,000 with Defendant over the course of 2-3 months, Plaintiff's owner emailed Defendant about the fact "plaintiffs" who were properly disengaged after the 144 hour deadline were not being credited back into Plaintiff's pre-funded account.

53.    On July 12, 2020, Plaintiff conducted an audit and determined that Plaintiff only had 82 engaged "plaintiffs" from Defendant yet was billed for 111 "plaintiffs." Plaintiff emailed Defendant about this discrepancy.

54.    Lauren Mingee replied on that same date "Looping in our Operations, he will be the one to go over disengagements."

55.    Prior to this time, Plaintiff was never advised of an "Operations" department nor that "Mike" apparently was in charge of "disengagements."

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

56.     Plaintiff had a phone call with Mike shortly thereafter wherein it was apparent Lauren Mcneill had already given Mike a directive that no disengagements would be credited.

57.     Lauren Mcneill nor anyone from Quintessa would discuss the merits of the disengagement credits referenced in Plaintiff's July 12, 2020 email despite phone calls, texts and emails from Plaintiff.

58.     "Mike" never communicated with Plaintiff any resolution to the fact Plaintiff had been requesting disengagement credits for months and that those credits were not being refunded by Defendant.

59.     On July 17, 2020, Plaintiff emailed Defendant advising it was in material breach of the contract and gave it until July 24, 2020 to cure its breach. That email stated:

That makes no sense at all and is NOT what we agreed upon. We had a conversation wherein I SPECIFICALLY stated it was IMPOSSIBLE for us to confirm insurance coverage that fast.

At this point, I am telling you that Quintessa is in underline material breach of contract and we will exercise all rights accordingly. I am giving you an opportunity to cure this material breach by engaging in a phone call with me (a nice one) and reviewing each case (which I have asked for numerous times).

I remain available to discuss this for **one week**. After that, I am not willing to further discuss and will take all actions necessary to recover the funds that were improperly taken by Quintessa.

60.     During this time, Plaintiff remained open and available to discuss the merits of each of the 22 cases in issue.

61.     During that time, Defendant refused to have any conversation on any of the 29 cases.

62.     Instead, Defendant hired a lawyer in Oklahoma and Plaintiff worked through him and once again asked to have a discussion about each one of the 29 cases.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

63.     Defendant, through its lawyer, refused to have any discussion on any of the 29 cases. Instead, Defendant's lawyer inquired of approximately 3 cases wherein Defendant now claimed Plaintiff retained plaintiffs but they were "disengaged" in the Google Document portal.

64.     Plaintiff emailed Defendant's lawyer information on all 3 of those cases during the phone call wherein this issue was raised proving in all but one that Plaintiff had turned down the case.

65.     Plaintiff demonstrated it was acting in good faith by immediately responding to Defendant's concern about these three plaintiffs and provided documentation to Defendant's counsel on each.

66.     Despite Plaintiff's good faith, Defendant continued to act in bad faith by refusing to address any of the 29 plaintiffs in dispute.

67.     On July 23, 2020 at 4:26pm CST, Defendant's lawyer for the first time, communicates an intention to file a lawsuit against Plaintiff for breach of contract and fraud in 34 minutes. Here is that email:

*Ryan,*

*I'm not quite sure how you can listen to this conversation and contend that Leo and Lauren gave you a blanket extension on all cases while you're trying to verify insurance coverage. This has been your position since we started discussing this matter.*

*Leo and Lauren literally say at the 8:00-9:30 minute mark that while they have no problem granting extensions, its "not a blanket extension of like 14 days on top of the 7." Rather, if you have "potentially a great case and want it to work" and you explain what's going on, they will consider that, and usually granting the extension won't be an issue. This is completely in line with what Lauren and Leo have been saying: it is completely against their business model to grant blanket time extensions on all cases, but they do grant them on a case-by-case basis.*

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

*At this point, Quintessa demands payment for every lead they have sent to The Bradley Law Firm for which it has not provided a proper disengagement reason (including email-only leads).*

*Quintessa is tired of the lawsuit threats and has elected to file suit itself for breach of contract and fraud. Suit will be filed by 5:00pm unless The Bradley Law Firm agrees to pay for every lead sent to it where there is not a valid/timely disengagement reason.*

*Ben M.*

68.     Neither Defendant nor its counsel ever identified the grounds upon which 33 cases it referred to or the basis for its newfound request for compensation.

69.     Defendant cancelled Plaintiff's account on July 17, 2020.

70.     Defendant revoked Plaintiff's access to the Google Document shortly thereafter.

71.     Plaintiff demanded all unearned funds be returned to Plaintiff.

72.     As of the filing of this lawsuit, none of the unearned funds in Plaintiff's account have been returned.

## COUNT I – BREACH OF CONTRACT

73.     Plaintiff fully incorporates paragraphs 1-72 as if fully set forth herein.

74.     Plaintiff at all times fully performed all conditions and obligations under the contract and as modified by the parties agreements.

75.     Defendant was and still remains in material breach of contract for failure to timely provide disengagement credits for unqualified "plaintiffs."

76.     Defendant was afforded an opportunity to cure its material breach of contract.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

77.    Plaintiff has incurred damages as a result of Defendant's breach of contract and believes that amount to be approximately $50,000.00, but is subject to change once Plaintiff regains access to the Google Document. In no event do the total damages in this case exceed $75,000.00.

**WHEREFORE,** Plaintiff requests damages against Defendant in the amount of $50,000.00 and for any such other relief and further relief this courts seems appropriate.

## COUNT II- FRAUD

78.    Plaintiff fully incorporates paragraphs 1-77 as if fully set forth herein.

79.    Defendant made representations and engaged in a course of conduct that that lead Plaintiff to believe and understand it would have more than 144 hours to verify the existence of insurance for any engaged or unengaged "plaintiff" without any pre-condition to obtain approval and in fact gave Plaintiff no reasonable method through the portal to request an extension.

80.    Defendant knew it would have a financial windfall by engaging objectively unqualified cases on behalf of Plaintiff, send to Plaintiff despite them not being qualified or having any reasonable chance of being qualified, tasking Plaintiff with the burden of qualifying them, and hoping Plaintiff would not do so within 144 hours.

81.    Defendant knew this because it also knew that Plaintiff operated under the reasonable belief that it had more than 144 hours to disengage any case if there was in fact no insurance.

82.    Defendant's refusal to utilize Plaintiff's new retainer contract despite giving it to Defenant on three separate occasions is indicative of Defendant's scheme. Defendant knew if engaged "plaintiffs" read the very first paragraph that clearly set forth the agreed-upon minimum criteria that use of the new retainer contract would likely thwart and expose Defendant's fraud.

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

83.    Plaintiff began requesting disengagement beyond the 144 hours for lack of insurance in the infancy of the contractual relationship.

84.    Instead of clarifying Defendant's position on disengagement, as expressly requested by Plaintiff, Defendant knew it was financially better off to not clarify this and instead lead Plaintiff down the proverbial primrose path.

85.    Defendant clearly was advised on numerous occasions of disengagement requests beyond the 144 hour mark for lack of insurance.

86.    During this time, Defendant knew there was an obvious disagreement upon how disengagements would be granted.

87.    During this time, Defendant knew Plaintiff was ignorant of Defendant's deceptive conduct in this regard yet kept requesting $50,000 payments from Plaintiff, which it paid, to the tune of $250,000.00.

88.    Beyond the insurance scheme stated above, upon information and belief, Defendant engaged "plaintiffs" it expressly knew were unqualified and without any reasonable believe they could or would be qualified and in some instances fabricated evidence to make the "plaintiff" appear to be qualified when in fact they were not.

89.    On multiple occasions, the material information regarding minimum requirements that was obtained directly by Plaintiff from the engaged "plaintiff" was at odds with that placed within the intake by Defendant, which resulted in the lead becoming disqualified.

90.    Defendant maintains audio recordings of all phone calls with "plaintiffs" it qualifies.

91.    Plaintiff previously requested access to those phone calls when it became suspicious that the information provided by "plaintiffs" expressly contradicted that which

Electronically Filed - City of St. Louis - August 03, 2020 - 10:29 AM

Defendant put in the intake form to qualify and charge Plaintiff. Defendant rejected Plaintiff's request for access to those phone call recordings.

92.     Defendant's representations as stated above were false.

93.     Defendant' representations as stated above were material.

94.     Defendant and its owners Lauren Mingee and Leo Mingee had knowledge of their representations falsity.

95.     Defendant Lauren Mingee and Leo Mingee had the intent that their representation be acted on by the hearer in the manner reasonably contemplated.

96.     Plaintiff was ignorant of the falsity of the representation.

97.     Plaintiff relied upon Defendant's representations being true.

98.     Plaintiff had a right to rely on the representations.

99.     Plaintiff was consequently and proximately caused damage as a result thereof.

100.    Upon information and belief, Defendants have engaged in this type of fraudulent conduct in the past with other firms, which plaintiff specifically requests discovery upon so that it may amend its Petition in the future to state additional claims for relief, including but not limited to punitive damages.

**WHEREFORE,** Plaintiff requests damages against Defendant in the amount of $50,000.00 and for any such other relief and further relief this courts seems appropriate.

Respectfully submitted,
By: /s/E. Ryan Bradley

**E. Ryan Bradley, #53777**
Attorney for Plaintiff
The Bradley Law Firm
1424 Washington Avenue, Ste 300
St. Louis, MO 63103
(314) 721-9111 (phone)
Ryan@thebradleylawfirm.com

2022-CC09383

Electronically Filed - City of St. Louis - July 23, 2020 - 05:02 PM

**IN THE CIRCUIT COURT OF ST. LOUIS CITY**

**STATE OF MISSOURI**

| | | |
|---|---|---|
| ERB LEGAL INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. |
| QUINTESSA MARKETING, LLC, | ) | |
| | ) | Division No. |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**<u>PETITION</u>**

**COMES NOW** Plaintiff, ERB Legal Investments, LLC, by and through the undersigned attorneys, and for the cause of action against Defendant, Quintessa Marketing, LLC states as follows to the Court:

1.    Plaintiff ERB Legal Investments LLC is a Missouri Corporation.

2.    Defendant Quintessa Marketing, LLC is an Oklahoma Corporation.

Electronically Filed - City of St. Louis - July 23, 2020 - 05:02 PM

3.      Plaintiff and Defendant entered into a contract attached as Exhibit 1.

4.      Plaintiff fully performed all obligations.

5.      Defendant is in material breach of contract.

6.      Defendant was afforded an opportunity to cure said breach but did not do so.

7.      Plaintiff has incurred damages as a result of Defendant's breach of contract in the amount of $50,000.00.

**WHEREFORE,** Plaintiff requests damages against Defendant in the amount of $50,000.00 and for any such other relief and further relief this courts seems appropriate.


Respectfully submitted,


By: /s/E. Ryan Bradley

**E. Ryan Bradley, #53777**
Attorney for Plaintiff
The Bradley Law Firm
1424 Washington Avenue, Ste 300
St. Louis, MO 63103
(314) 721-9111 (phone)
(314) 391-4126 (fax)
Ryan@thebradleylawfirm.com

**2022-CC09383**

Electronically Filed - City of St. Louis - July 23, 2020 - 05:02 PM

# QUINTESSA MARKETING

BULK MARKETING, FULL SERVICE PLATFORM AND GENERAL TERMS OF SERVICE

This agreement is entered into as of ("the effective date"), between you, <u>The Bradley Law Firm</u>  ("you" or "your") and QUINTESSA MARKETING and its affiliates (collectively "QUINTESSA") for the services ("services") described below.

### Details of Services Provided by Quintessa Marketing:

Beginning on the effective date, _04/20/2020_, QUINTESSA MARKETING will begin to deliver Personal Injury leads in Missouri to _The Bradley Law Firm_.

QUINTESSA adheres to required disclaimers including Missouri's on all owned digital properties used to generate leads and do not include any specific attorney information.

QUINTESSA MARKETING will provide pre-qualified leads to <u>The Bradley Law Firm</u>. Prompt lead delivery is provided via email, portal notification and live call transfer.

| Lead Tier | Description | Price | Territory |
|-----------|-------------|-------|-----------|
| Tier 1 | Motor Vehicle Accident | $2,000 per Plaintiff | Missouri |
| Tier 2 | Commercial Policy/Motor Vehicle Accident Injury | $4,200 per Plaintiff | Missouri |

### Terms and Cancellation:

Initial

The Marketing Campaigns are pre-funded with an initial payment of $50,000. Tier 1/Tier 2 leads are deducted from the funded amount at the time of lead delivery.

> Quintessa tracks and accounts for the funds each law firm has in its campaign at all times. Your law firm has the ability to see how much money remains in its campaign at any given time.

Campaign funding balance must remain above 10%. Once your balance reaches 10%, Quintessa will notify you of additional funding requirements to continue your campaign.

The Bradley Law Firm will have six full days (at least 144 hours) to turn down or disengage the lead for approved reasons described below unless otherwise agreed upon in writing by Quintessa Marketing. At 12am on the seventh day, leads will not be eligible for disengagement. Leads that are turned down or disengaged for the approved reasons described in this agreement will be credited back to your Campaign balance once Quintessa has verified and may be subject to internal audit which typically takes 5 days.

### Turndowns and Disengagements

Approved reasons for turning down or disengaging a lead, unless otherwise agreed by Quintessa Marketing are as follows:
- ~~Client~~ At fault
- Property Damage under $1,500
- Defendant Uninsured **and** no PC UM
- No medical treatment within 14 days of injury

Exhibit 1

Electronically Filed - City of St. Louis - July 23, 2020 - 05:02 PM

Leads that you turn down or disengage, must be done by using the Quintessa Marketing portal in order to receive credit back to your campaign. Leads may no longer be pursued by The Bradley Law Firm or its affiliate referral firms once the lead has been disengaged.

Quintessa Marketing reserves the right to cap MVA disengagements at a rate of 45%

Service Fee: Quintessa also provides call center intake services and reporting for your marketing campaign at a rate of 2% of all funding. Service fee is waived if payment is made via ACH.

By Signing this Agreement, I understand and agree to the Services Provided and the Terms of this Agreement.

_____
Signature

Lauren Mingee CEO & Owner
Quintessa Marketing

_____
Printed Name

Lauren Mingee CEO & Owner
Quintessa Marketing

_____
Signature

Licensee
The Bradley Law Firm

_____
Printed Name

Licensee
The Bradley Law Firm

4 - 21-20
_____
Date

53777 (MO)
_____
Bar ID Number

Exhibit 1

## Privacy and Disclosure Page

This page is used to inform website visitors regarding our policies with the collection, use, and disclosure of Personal Information if anyone decided to use our Service, the QMIlandingpagedomain.com website.

If you choose to use our Service, then you agree to the collection and use of information in relation with this policy. The Personal Information that we collect are used for providing and improving the Service. We will not use or share your information with anyone except as described in this Privacy Policy.

The terms used in this Privacy Policy have the same meanings as in our Terms and Conditions, which is accessible at QMIlandingpagedomain.com, unless otherwise defined in this Privacy Policy.

**Information Collection and Use**

For a better experience while using our Service, we may require you to provide us with certain personally identifiable information, including but not limited to your name, phone number, and postal address. The information that we collect will be used to contact or identify you. It will also be used in helping to determine if contracting with an attorney would be of benefit for you.

**Log Data**

We want to inform you that whenever you visit our Service, we collect information that your browser sends to us that is called Log Data. This Log Data may include information such as your computer's Internet Protocol ("IP") address, browser version, pages of our Service that you visit, the time and date of your visit, the time spent on those pages, and other statistics.

**Cookies**

Cookies are files with small amount of data that is commonly used an anonymous unique identifier. These are sent to your browser from the website that you visit and are stored on your computer's hard drive.

Our website uses these "cookies" to collection information and to improve our Service. You have the option to either accept or refuse these cookies, and know when a cookie is being sent to your computer. If you choose to refuse our cookies, you may not be able to use some portions of our Service.

**Security**

We value your trust in providing us your Personal Information and aim to use commercially acceptable means of protecting it. Please keep in mind that no method of transmission over the internet, or method of electronic storage is 100% secure and reliable, and we cannot guarantee its absolute security.

**Links to Other Sites**

Our Service may contain links to other sites. If you click on a third-party link, you will be directed to that site. External sites are not operated by us so we strongly advise you to review the Privacy Policy of these websites. We have no control over, and assume no responsibility for the content, privacy policies, or practices of any third-party sites or services.

**Children's Privacy**

Our Services do not address anyone under the age of 13. We do not knowingly collect personal identifiable information from children under 13. In the case we discover that a child under 13 has provided us with personal information, we immediately delete this from our servers. If you are a parent or guardian and you are aware that your child has provided us with personal information, please contact us so that we will be able to do necessary actions.

**Residents of California**

If you are a resident of the State of California, we are required to inform you that any personal information you provide on this site may be shared with a third-party attorney. This information includes your name, number and email address along with any additional information you enter.  If you would like to opt out of the sharing of your personal information, please email us admin@QMIlandingpagedomain.com

**Residents of Missouri**

The choice of a lawyer is an important decision and should not be based solely upon advertisements.

**Residents of Alabama**

No representation is made that the quality of the legal services to be performed is greater than the quality of legal services performed by other lawyers.

**Residents of Florida**

Florida Rule of Professional Conduct 4-7.10(c) defines a group advertising program operated by an organization wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group advertising program to be a lawyer referral service. By all other standards, we and the joint advertising ventures for which we are an agent are not lawyer referral services.

Exhibit 1

**Changes to This Privacy Policy**

We may update our Privacy Policy from time to time. Thus, we advise you to review this page periodically for any changes. We will notify you of any changes by posting the new Privacy Policy on this page. These changes are effective immediately, after they are posted on this page.

**Contact Us**

If you have any questions or suggestions about our Privacy Policy, do not hesitate to contact us. You can email info@QMlandingpagedomain.com

Electronically Filed - City of St. Louis - July 23, 2020 - 05:02 PM

Exhibit 1