# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ERB LEGAL INVESTMENTS, LLC, )<br>)<br>    Plaintiff and )<br>    Counterclaim defendant, )<br>)<br>    v. )<br>)<br>QUINTESSA MARKETING, LLC, )<br>)<br>    Defendant and )<br>    Counterclaim plaintiff. ) | No. 4: 20 CV 1255 DDN |

## MEMORANDUM AND ORDER

This consolidated action[1] is before the Court on the motions of defendant Quintessa Marketing, LLC, ("Quintessa") (a) to stay and transfer this action to the United States District Court for the Western District of Oklahoma (Doc. 13); and (b) to dismiss Count 2 of the amended complaint of plaintiff ERB Legal Investments, LLC, ("ERB") (Doc. 15); and on the motion of ERB for a protective order (Doc. 48). The parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c).

### *The Amended Complaint*

Plaintiff ERB alleges the following facts in its amended complaint, Doc. 5.[2] On April 21, 2020, plaintiff and defendant entered into a Marketing Agreement ("Contract"), wherein "[d]efendant would provide its 'bulk marketing' services for [p]laintiff and provide its 'full service platform' in marketing for, screening, qualifying, and signing 'plaintiffs' involved in motor vehicle collisions for representation." (Doc. 5 at 1-2.) Plaintiff was required to and did

---

[1] On February 23, 2021, the Court consolidated its Case No. 4:21 CV 19 DDN into this No. 4:20 CV 1255 DDN. (Doc. 36.)

[2] Plaintiff commenced this action in the Circuit Court of the City of St. Louis at 5:02 p.m. on July 23, 2020. Its amended petition was filed on August 3, 2020. Defendant removed the action to this Court on September 15, 2020. That pleading is now the amended complaint challenged by the motion to dismiss.

pre-fund the marketing account with $50,000.00; therefore, defendant always had possession of the unearned funds.  Defendant tracked all individuals it contacted on behalf of plaintiff in a real-time Google document. Plaintiff was granted read-only access to the Google document, although it could use the "disengage" button and use a note field. (*Id*. at 3.) Defendant failed to fulfill its duty of prequalifying all potential "plaintiffs" to ensure they met the minimum criteria for verification of insurance before signing them to plaintiff's contingency fee contracts. (*Id*.)

The amended complaint further alleges that on May 14, 2020, in a phone conversation, plaintiff's owner and defendant discussed the unqualified "plaintiffs," and plaintiff agreed to help qualify insurance while indicating that it took longer than the 144 hours within which plaintiff was required to disengage plaintiffs. (*Id*.) "Defendants stated that 'extensions' for insurance would be granted and that it would not be a problem." (*Id*.)  After the May 14 conversation plaintiff emailed to defendant a new retainer contract form that contained a notice to prospective clients about the insurance
circumstances of their being accepted by plaintiff as clients.  (*Id*. at 4.)  In reliance upon the May 2020 phone call, defendant continued to sign up "plaintiffs" when there initially appeared to be no insurance available. (*Id*. at 5.)  Over the next two months, defendant continued to sign up both qualified and unqualified "plaintiffs" on the old retainer contract instead of the new one, and deducted funds from plaintiff's account. During this time, defendant did not disclose to plaintiff that it required plaintiff to get defendant's permission to qualify cases beyond the 144 hours on a case-by-case basis.  (*Id*. at 4-5.)

Plaintiff alleges that it determined that approximately 22 cases were not qualified due to insurance.  Defendant ignored plaintiff's requests that these 22 cases be disengaged.  Over the course of two-to-three months, plaintiff emailed defendant about the cases that were not properly disengaged.  On July 20, 2020, plaintiff determined that it had engaged 82 "plaintiffs" from defendant but defendant billed the account for 111 "plaintiffs."

Plaintiff alleges that on July 17, 2020, it notified defendant that it had materially breached the Contract and gave it until July 24, 2020, to cure the breach.  On July 23, 2020, defendant gave plaintiff notice that it would file a lawsuit against plaintiff.   Defendant

cancelled plaintiff's account. Plaintiff demanded the return of all unearned funds to plaintiff, which has not occurred.

In its amended complaint, plaintiff alleges claims against defendant for breach of contract and fraud. (Doc. 5 at 12-15.)

### *Motion to Stay and Transfer*

In addition to the commencement of this action, on July 23, 2020, Quintessa sued ERB in Oklahoma state court, also alleging breach of contract and fraud. ERB removed the state court action to the United States District Court for the Western District of Oklahoma. (Doc. 14 at 2.) On January 5, 2021, the Western District of Oklahoma denied ERB's motion to dismiss and transferred that case to this Court. *See* Quintessa, LLC v. ERB Legal Investments, LLC, E. D. Mo. No. 4:21 CV 19 at Doc. 9. In that case, Quintessa alleges breach of contract and fraud arising from the same controversy. As stated, the two actions are now consolidated. For this reason, defendant's pending motion to stay and to transfer (Doc. 13) is denied as moot.

### *Motion to Dismiss*

Defendant Quintessa moves to dismiss plaintiff's Count 2 fraud claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because it is barred by the Missouri economic loss doctrine. (Doc. 15.) In ruling such a motion, the Court must accept all of plaintiff's alleged facts as true and draw all inferences in plaintiff's favor. *Retro Television Network, Inc. v. Luken Communications, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

The Court's subject matter jurisdiction is granted by 28 U.S.C. § 1332(a)(1), being founded on the diversity of the parties' citizenship and the amount in controversy. (Doc. 1 at 2.) In such a case, the Court looks to the substantive law of the forum state for the rules of decision in the case. 28 U.S.C. § 1652. "When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri. If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law."

*Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905 (8th Cir. 2013) (quoted citation omitted).

In support of its motion to dismiss, defendant argues only that, as a matter of law, plaintiff's Count 2 fraud claim is barred by the Missouri economic loss doctrine.  (Doc. 16 at 4.)  To prevail on this argument, which is not an essential element of plaintiff's Count 2 claim, defendant must show that the allegations in the amended complaint establish this defense as a matter of law.  *Weatherly v. Ford Motor Co.,* 2021 WL1522137, at *2 (8th Cir. Apr. 19, 2021).

"In Missouri, the economic loss doctrine prohibits a plaintiff 'from seeking to recover in tort for economic losses that are contractual in nature.'"  *Spring Lake Pork, LLC v. Great Plains Management, LLC*, 2020 WL 3542292 at *3 (E. D. Mo. June 30, 2020) (quoting *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.,* 332 S.W.3d 184, 192 (Mo. Ct. App. 2010)).  Plaintiff argues in opposition that its fraud claim "is not incorporated into the parties' contract," and it has damages outside the contract.  (Doc. 22 at 1-2.)

The Missouri Supreme Court has not addressed the application of the economic loss doctrine to a claim of fraud.  However, the Missouri Court of Appeals has directly addressed the issue, holding that "[a] fraud claim is permitted only if it arises from acts that are separate and distinct from the contract."  *O'Neal v. Stifel, Nicolaus & Co., Inc.*, 996 S.W.2d 700, 702 (Mo. Ct. App. 1999) (finding negotiations before a contract could form a basis for a separate and distinct fraud claim).  Similarly, in *Dannix Painting, LLC v. Sherwin-Williams Co.*, the Eighth Circuit Court of Appeals noted, in reference to a contract, that a distinction between the advice given and the product about which the advice was given was a distinction without difference and applied the economic loss doctrine to affirm the district court's dismissal of a misrepresentation claim. 732 F.3d at 909-10.

However, on March 17, 2021, the Court of Appeals for the Eighth Circuit ruled that the Missouri Supreme Court would not apply the economic loss doctrine to claims of fraud in cases arising, like this one, outside the Uniform Commercial Code.  *See Dunne v. Resource Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021).  *Dunne* involves the purchase of licenses for a system involving a certain technology.  Dunne alleges the capabilities of the system were misrepresented.  This District Court applied Missouri's economic loss doctrine to plaintiff's

claims of fraud and negligent misrepresentation arising out of the license agreements. On appeal, the Eighth Circuit Court of Appeals reversed and remanded the claims, stating:

> As we explained in Dannix Painting, the economic loss doctrine "was judicially created to protect the integrity of the [UCC] bargaining process" by "prevent[ing] tort law from altering the allocation of costs and risks negotiated by the parties." 732 F.3d at 906 (citations omitted). Recently, in Vogt v. State Farm Life Insurance Co., this Court declined to apply the doctrine under Missouri law to a conversion claim, noting that Missouri law has limited "this doctrine to warranty and negligence or strict liability claims." 963 F.3d 753, 774 (8th Cir. 2020) (collecting Missouri cases applying the doctrine to UCC claims). In Vogt, we found it proper to limit the doctrine to its "traditional moorings." Id. That rationale applies with equal force here, and, while there may be some circumstance where the Missouri Supreme Court would apply the doctrine outside the UCC, this is not the case. We find the courts which have found the doctrine does not apply in circumstances like these persuasive. See, e.g., Steadfast Ins. Co. v. ARC Steel, LLC, Case No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *3 (W.D. Mo. May 13, 2019) (collecting cases declining to apply the doctrine to cases outside the UCC). We will not expand the economic loss doctrine beyond the contexts in which it has been applied by Missouri courts. We reverse the district court's application of the doctrine to bar Dunne's misrepresentation claims.

991 F.3d at 943 (footnote not included). This Court is satisfied that on the face of plaintiff's amended complaint defendant has not established that Missouri's economic loss doctrine bars plaintiff's fraud claim. The motion to dismiss is denied.

### *Motion for Protective Order*

The parties have outstanding mutual discovery requests and have agreed to a mutual response deadline of April 30, 2021. According to plaintiff ERB, defendant Quintessa seeks communications between ERB and the Quintessa leads that ERB turned down, trust accounting, and ERB client file contents. Plaintiff characterizes this information as confidential and protected by the attorney-client privilege. Plaintiff ERB seeks a protective order under Federal Rule of Civil Procedure 26(c) that requires the "basis for [defendant's] allegations [against plaintiff] be first disclosed prior to ERB producing communications with Quintessa referred leads and for the Court to enter a proper protective order to protect the confidential and privileged nature of any documents it determines ERB must produce in

discover." (Doc. 48 at 3.) Defendant objects to this condition being placed on its entitlement to discovery from plaintiff. (Doc. 49.)

The Court may for good cause, such as avoidance of annoyance or oppression, order that discovery on topics proceed in a certain sequence. *See* Fed. R. Civ. P. 26(c)(1); *E.g., Roberts v. American Intern., Inc.*, 883 F. Supp. 499, 505 (E. D. Calif. 1995). Plaintiff's argument is based on its denial of defendant's allegations against it and the protection of privileged information. Its denial of defendant's allegations is, without more, an insufficient basis for ordering the sequence of discovery. The protection of arguably privileged information can be accomplished by the procedure prescribed by Fed. R. Civ. P. 26(b)(5).

## CONCLUSION

Therefore,

**IT IS HEREBY ORDERED** that defendant's motion to stay and to transfer these proceedings (Doc. 13) is **denied** as moot.

**IT IS FURTHER ORDERED** that, defendant's motion to dismiss Count 2 of plaintiff's amended petition (Doc. 15) is **denied.**

**IT IS FURTHER ORDERED** that the motion of plaintiff for a protective order (Doc. 48) **is denied without prejudice.**

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 21st day April, 2021.