**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ERB LEGAL INVESTMENTS LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| v. | ) | Cause No. 4:20-cv-1255-DDN |
| | ) | |
| QUINTESSA MARKETING, LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
COUNTS II AND III OF THE SECOND AMENDED COMPLAINT**

Defendant/Counterclaim Plaintiff Quintessa LLC (improperly named as Quintessa

Marketing LLC) ("Quintessa") and Defendant Lauren Mingee submit this memorandum in support

of their Motion to Dismiss Counts II and III of the Second Amended Complaint.

**I.      Count II Must Be Dismissed for Failing to Plead Fraud with Particularity.**

Federal Rule of Civil Procedure 9(b) requires that circumstances constituting fraud be

pleaded with particularity. The complaint must allege "such matters as the time, place, and contents

of false representations, as well as the identity of the person making the misrepresentation and

what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783–84 (8th

Cir. 2009). In other words, the complaint must plead the "who, what, where, when, and how" of

the alleged fraud. *Id.*

This higher degree of notice "is intended to enable the defendant to respond specifically

and quickly to the potentially damaging allegations." *Id.* "[C]onclusory allegations that a

defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.*

"Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity

requirement." *Id.*

Within Count II, Plaintiff makes numerous fraud allegations, none of which are pleaded with the particularity required by Rule 9(b). Each will be addressed in turn. Because as described below Plaintiff failed to plead any facts with sufficient particularity to support any of its fraud claims, Count II should be dismissed in its entirety.

### A.      Insurance

In Count II, Plaintiff claims that "Quintessa made representations and engaged in a course of conduct that that lead [sic] Plaintiff to believe and understand it would have more than 144 hours to verify the existence of insurance for any engaged or unengaged 'plaintiff' without any pre-condition to obtain approval and in fact gave Plaintiff no reasonable method through the portal to request an extension." D.E. 63 ¶ 82.

In Paragraph 19 of the Complaint, Plaintiff does describe a conversation with Lauren Mingee, the owner of Defendant Quintessa. This paragraph does not, however, explain the basis of any fraud claim. The closest Plaintiff gets is stating that "Quintessa stated that 'extensions' for insurance would be granted and that it would not be a problem." *Id.* In a subsequent paragraph, Plaintiff acknowledges that this was "not a blanket extension." *Id.* at ¶ 68.

The contract between the parties states that "The Bradley Law Firm will have six full days (at least 144 hours) to turn down or disengage the lead for approved reasons described below *unless otherwise agreed upon in writing by Quintessa Marketing*."[1] Exhibit 1 at 1 (emphasis added). Nowhere in the Complaint does Plaintiff allege that it ever requested an extension in writing or that Quintessa refused any requested extensions. Instead, Plaintiff, a law firm, claims that it apparently did not understand the process to request extensions, despite the process being outlined

---

[1]      Plaintiff apparently meant to attach the contract to the Amended Complaint but failed to do so. *See* D.E. 63 ¶ 5. Since Plaintiff expressly incorporated the Contract into the Amended Complaint, Defendants attach it to this Memorandum. *See* Exhibit 1.

in the contract. D.E. 63 ¶¶ 33-34. Plaintiff's inability to understand how to request extensions does not constitute fraud.

Plaintiff also acknowledges that it failed to comply with the express terms of the contract by requesting "disengagement beyond the 144 hours." D.E. 63 ¶¶ 86-89. Plaintiff apparently believes that its failure to abide by the terms of the contract is somehow also fraud attributable to Defendant Quintessa. The rationale for this claim is never clarified, much less pled with specificity. Accordingly, the portion of the fraud claim related to insurance-related extensions should be dismissed.

### B.    Purportedly Unqualified Leads

Count II also claims that "*upon information and belief*, Quintessa engaged 'plaintiffs' it expressly knew were unqualified and without any reasonable believe [sic] they could or would be qualified and in some instances fabricated evidence to make the 'plaintiff' appear to be qualified when in fact they were not." D.E. 63 ¶ 91 (emphasis added). Plaintiff also claims that "[o]n multiple occasions, the material information regarding minimum requirements that was obtained directly by Plaintiff from the engaged 'plaintiff' was at odds with that placed within the intake by Quintessa, which resulted in the lead becoming disqualified." *Id.* ¶ 92.

Plaintiff makes these allegations upon information and belief, which is generally impermissible. Plaintiff also never identifies any of the facts supporting the "who, when, what, why, or how" for these conclusory allegations. Plaintiff does not identify a single lead where the information provided during intake was in any way incorrect, much less fraudulent. The information related to the leads is equally available to Plaintiff, so there is no legitimate reason to plead this "upon information and belief." Because Plaintiff failed to plead these allegations with

3

any factual support, much less with particularity, the portion of Count II regarding purportedly unqualified leads should also be dismissed.

### C.       Purportedly Fraudulent Conduct with Other Firms.

Finally, Plaintiff also baldly claims that "*[u]pon information and belief*, Defendants have engaged in this type of fraudulent conduct in the past with other firms." D.E. 63 ¶ 103 (emphasis added). Plaintiff again pleads this upon information and belief and offers absolutely zero details to support this inflammatory claim. The circumstances of these alleged misdeeds are not described, and Plaintiff again provides no details constituting the "who, when, what, why, or how" for these baseless allegations. Because Plaintiff failed to plead these allegations with particularity, the portion of Count II regarding alleged fraudulent conduct with other firms should also be dismissed.

### II.      Count III Must Be Dismissed for Failure to State a Claim.

In Count III, Plaintiff purports to state a claim for piercing the corporate veil. Again, Plaintiff makes conclusory allegations "upon information and belief," with no facts to support these claims. Count III should also be dismissed.

In order to state a claim for piercing the corporate veil, a plaintiff must show "1) complete domination and control of such a degree that the corporate entity had no will or existence of its own; and 2) that such control of the corporate structure perpetuated a fraud, wrong, or similar injustice. *Cent. Parking Sys., Inc. v. Tucker Parking Equities LLC*, 4:18 CV 125 CDP, 2018 WL 5298466, at *3 (E.D. Mo. Oct. 25, 2018) (citing *Collet v. American Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. App. 1986)). Plaintiff must also show that the control and subsequent breach of duty proximately caused the injury. *Id.*

To support its piercing the corporate veil claim, Plaintiff alleges: 1) that Quintessa's owner, Lauren Mingee, owns other companies (D.E. 63 ¶ 108); 2) that one or more of those companies

4

has been involved with litigation (D.E. 63 ¶ 111); and 3) that at least one of the companies owned by Lauren Mingee has been dissolved (D.E. 63 ¶ 112).

The fact that someone owns more than one company, that one or more of those companies have been involved in litigation, and that one or more of those may have been dissolved at some point does not, by itself, support a claim for piercing the corporate veil. Certainly, none of these allegations have anything to do with a claim that Ms. Mingee exerted "complete domination and control of such a degree that the corporate entity had no will or existence of its own" or "that such control of the corporate structure perpetuated a fraud, wrong, or similar injustice." *Id.* Under Plaintiff's theory, any person who owned two entities, one of which was a party to a lawsuit or was dissolved, would expose themselves to personal liability. That is obviously an absurd claim, contrary to the fundamentals of corporate law.

Plaintiff goes on to make the defamatory allegation that "*[u]pon information and belief, Defendant Mingee may* have utilized other similar businesses, including but not limited to those in paragraph 108 for improper purposes to perpetuate injustice and avoid legal obligations." D.E. 63 ¶ 115. Plaintiff cites absolutely zero evidence for making this outrageous claim that Defendant Mingee ever used a business for improper purposes, avoided any legal obligations, or perpetuated any injustice. Plaintiff additionally does not even attempt to describe what it means by "perpetuate injustice and avoid legal obligations."

The remainder of Count III is a conclusory recitation of elements of a claim to pierce the corporate veil. D.E. 63 ¶¶ 116-119. Conclusory allegations of control with no supporting facts are insufficient to establish a claim for piercing the corporate veil. *Cent. Parking Sys., Inc. v. Tucker Parking Equities LLC*, 4:18 CV 125 CDP, 2018 WL 5298466, at *4 (E.D. Mo. Oct. 25, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations are nothing more

5

than a formulaic recitation of veil-piercing elements. These labels and conclusions supported only by conclusory statements do not state a claim." *Id.*

In *Cent. Parking*, the court was faced with similar conclusory allegations supporting a piercing the corporate veil claim. The court found that these threadbare allegations were "insufficient for me to draw a reasonable inference that the [defendants] acted with the requisite degree of control and complete domination over the entity to justify piercing the corporate veil." *Id.*; *see also Cholla Petroleum, Inc. v. Ross Expls., Inc.*, 2:16-CV-02051, 2016 WL 11472332, at *3 (W.D. Ark. Oct. 12, 2016) ("there are no factual allegations to support even a reasonable inference of abuse of the corporate form"). Reciting elements of a cause of action "supported by mere conclusory statements do[es] not suffice" to state a claim for piercing the corporate veil. *Cholla* Petroleum, 2016 WL 11472332, at *3.

Because Plaintiff fails to provide any facts to support a piercing claim, Count III should be dismissed and Defendant Mingee should be dismissed as a party.

WHEREFORE, for the reasons stated above, Defendants respectfully request the Court to enter an order dismissing Counts II and III and dismissing Defendant Mingee as a party.

Respectfully submitted,

KHAZAELI WYRSCH, LLC

/s/ James R. Wyrsch
James R. Wyrsch, #53197
911 Washington Avenue, Suite 211
St. Louis, Missouri 63101
james.wyrsch@kwlawstl.com
Phone No. (314) 288-0777
Fax No. (314) 400-7701

*Attorney for Quintessa LLC and Lauren Mingee*

6