**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERB LEGAL INVESTMENTS LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| v. | ) | Cause No. 4:20-cv-1255-DDN |
| | ) | |
| QUINTESSA MARKETING, LLC, et al. | ) | |
| | ) | |
| Defendants/Counterclaim Plaintiff. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR A PROTECTIVE ORDER**

In its discovery requests, Plaintiff seeks to discover information related to Defendant's other customers. *See* Exhibit 1, Interrogatory Nos. 15, 19-20, RFP Nos. 9, 24-25. Plaintiff is claiming that the information is relevant to its fraud claims, which are currently the subject of a motion to dismiss for failure to state a claim and for failure to plead with particularity.

Plaintiff's fraud claims are specious. Thus, Plaintiff has no legitimate reason to obtain this information. Plaintiff's true motive appears to be a desire to harass Quintessa's clients and disrupt Quintessa's business. Quintessa's clients are law firms who depend on confidentiality. Permitting Plaintiff to harass Quintessa's clients because Plaintiff has merely alleged fraud and has not properly pled the allegations or provided a scintilla of evidence to support its claim will irreparably harm Quintessa.

Accordingly, Quintessa respectfully requests the court to enter an order barring Plaintiff from discovering this information. At a minimum, Quintessa requests the Court to implement safeguards to prevent Plaintiff from poisoning Quintessa's client relationships with misinformation.

1

## BACKGROUND

Despite Plaintiff's best efforts at muddying the waters with a kitchen sink approach of claims and allegations, this case is ultimately a breach of contract claim. Plaintiff claims that Quintessa charged it for case leads that were not "qualified" under the contract between the parties. In its Second Amended Complaint, Plaintiff has pled a spurious fraud claim against Quintessa. *See* D.E. 63. While inflammatory, the allegations are without any substance and do not actually state any claim for fraud. Quintessa has filed a motion to dismiss the claim. *See* D.E. 68-69. This fraud claim is Plaintiff's only justification to demand discovery of Quintessa's client list, claiming that Plaintiff is entitled to this discovery to establish a pattern and practice of fraud. As described in the motion to dismiss, Plaintiff has not established any evidence of fraud in this case, much less evidence of a pattern and practice.

## I.     The Court Should Bar Plaintiff from Obtaining Discovery About Quintessa's Clients.

The Court should issue a protective order protecting Quintessa from having to produce information related to its clients. As noted above, this is a breach of contract claim. The only question to be resolved in this litigation is whether either party breached the terms of the contract. Despite its best efforts, Plaintiff has not offered any evidence of fraud or even a cognizable theory of fraud.[1] Plaintiff's primary complaint is that he only had 144 hours to accept or decline to represent a lead provided by Quintessa. D.E. ¶ 83. Plaintiff accurately states that Quintessa agreed to consider requests for extensions of this time period on a case-by-case basis. D.E. 63 ¶¶ 19, 63.

---

[1]     In support of its position, Plaintiff also points to another lawsuit recently filed against Quintessa in the Eastern District of Wisconsin. *See Hupy & Abraham, S.C. v. Quintessa LLC*, No. 2:21-cv-005779-JPS (E.D. Wis.). While this lawsuit does include a fraud claim, it is not similar to the allegations levied by Plaintiff. In *Hupy & Abraham*, the plaintiff law firm claims that Quintessa allegedly committed fraud by promising "150 to 200" cases per month but failed to do so. *See* D.E. 1, No. 2:21-cv-005779-JPS. Plaintiff does not make any allegation regarding a similar representation.

2

Plaintiff ultimately complains that it did not know how to communicate this request for an extension, even though the contract only states that it must be in writing. D.E. 63 ¶ 83; D.E. 69, Exhibit 1. Considering that Plaintiff is a law firm, its argument that it did not properly read a contract would be amusing had Plaintiff not tried to justify its incompetence by alleging a non-existent fraud. Given this is a straightforward breach of contract suit, Plaintiff has no reason to seek discovery regarding Quintessa's other clients.

In addition to relevance, however, Quintessa has serious concerns about what Plaintiff intends to do with this information. In this litigation, Plaintiff has made reckless, baseless allegations against Quintessa. Plaintiff has taken a scorched-earth approach in an attempt to distract from its own failure to read and abide by the terms of a contract. Specifically, in its Second Amended Complaint, Plaintiff alleged – without any supporting evidence – that "[u]pon information and belief, Defendant Mingee at minimum repeatedly utilizes Quintessa, LLC for improper purposes, to perpetuate injustice and avoid legal obligations." Similarly, in a discovery letter, Plaintiff claimed "[w]e have reason to believe that Mrs. Mingee habitually opens companies, runs them into the ground through litigation, then opens another similar company." *See* D.E. 55-3, pp 1-2.

When repeatedly pressed by Quintessa about what the "reason to believe" is for such an incendiary and libelous claim, Plaintiff has refused to offer a shred of evidence. Plaintiff has only pointed out that Quintessa and another entity owned by Ms. Mingee have previously been involved in some sort of litigation. Plaintiff has no proof of any judgments against a company owned by Ms. Mingee, much less any judgment that led Ms. Mingee to dissolve a company. Plaintiff has also not offered any evidence that Ms. Mingee has ever run a company "into the ground through

3

litigation." Nor could Plaintiff even produce such information, as these allegations are completely and utterly false.

With that backdrop, Plaintiff seeks the identity and contact information of every Quintessa client. These clients are all law firms. Given Plaintiff's track record with throwing around baseless allegations in this litgation, Quintessa has a legitimate concern that Plaintiff – who is representing itself in this litigation – will spread further misinformation in an attempt to poison Quintessa's business relationships. It is not a leap of reason to understand that law firms will look upon Quintessa unfavorably if they are made to reveal client information for litigation that they are not a part of. Accordingly, the Court should enter a protective order preventing Plaintiff from having access to this information.

Quintessa respectfully requests that the Court adopt the approach discussed in *Benedict Coll. v. Nat'l Credit Sys., Inc.*, CA 3:08-2520-JFA, 2009 WL 3839473, at *3 (D.S.C. Nov. 16, 2009). In that case, the plaintiff also alleged that it was entitled to a client list "in order to support its fraud and fraud in the inducement claims." *Id.* The court denied without prejudice a motion to compel client lists at this time, holding that "[s]hould discovery bear out [plaintiff's] fraud allegations, the court grants leave to refile the motion to compel [defendant's] tax documents and clients lists." *Id.* Simliarly, in *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007), the court held that in order to proceed to discovery on a fraudulent scheme, Plaintiff must provide "examples of specific false claims." *Id.* at 510.

As Plaintiff has yet offered any evidence of fraud other than speculation, Plaintiff should be barred from obtaining this discovery at this time. If Plaintiff uncovers some actual evidence of fraud, Plaintiff can revisit this matter in the future.

**II.     Alternatively, the Court Should Impose Strict Safeguards on the Use of Any Data.**

If the Court is inclined to require Quintessa to disclose this information, the Court should impose strict safeguards on this information.

In *May Coating Techs., Inc. v. Illinois Tool Works*, 157 F.R.D. 55, 56 (D. Minn. 1994), the defendant requested an order barring plaintiff "and its attorneys from contacting, communicating, or corresponding with [defendant's] actual and prospective customers for any purpose relating to this litigation, except through [defendant's] attorneys for reasonably necessary discovery." In support of its motion, the defendant stressed that it was attempting to prevent the plaintiff from "allowing it to use the lawsuit to harass [defendant's] actual and potential customers." *Id.* The defendant noted that the plaintiff had already contacted many of defendant's customers. *Id.* The court found that, under those circumstances, the defendant had established good cause and granted the request for a protective order. *Id.* at 57.

During the meet and confer process, Quintessa asked whether Plaintiff would agree to specific restrictions to give Quintessa confidence that Plaintiff would not interfere with its clients. Specifically, Quintessa suggested a combination of the following procedures:

1)      Disclosing to Quintessa a) what Plaintiff plans on doing with the client list; b) the questions Plaintiff will ask the clients; and c) the information Plaintiff will impart to Quintessa's clients;

2)      Using a third party, such as Plaintiff's co-counsel[2], to conduct the interviews; and/or

---

[2]      Plaintiff is represented in court by its sole owner, Ryan Bradley. Mr. Bradley is personally involved in all aspects of the matters at issue. He has a personal stake. Because of these stakes and any attendant emotional connection, it is highly likely that Mr. Bradley will not act like an uninterested third party and rather as a party who believes he was personally aggrieved.

3)      Using a court-approved questionnaire.

*See* Exhibit 2. Quintessa made these suggestions in order to both protect Quintessa and prevent any future allegations against Plaintiff of tortious interference or defamation. Plaintiff refused to agree to any such restrictions. Alarmingly, Ryan Bradley also stated that he had no reason to be concerned because anything he told or asked the witnesses would be protected by the litigation immunity doctrine.[3] *See* Exhibit 2. Bradley's claim – that he can do and say whatever he wants to Quintessa's clients with impunity – is quite troubling.

Quintessa hopes that the Court will bar any discovery of its clients at this time. Barring such a result, however, Quintessa respectfully requests the Court to impose the following safeguards:

1)      Require the information to be considered Attorneys' Eyes Only and allow access only to Plaintiff's co-counsel, The Page Law Firm. Ryan Bradley and his law firm should not be permitted to view this information or have any contact with Quintessa's clients.

2)      Require any communication with the clients to be in writing and pre-approved by Quintessa and/or the Court.

3)      In the event that oral communications are allowed, such communications must be recorded and provided to Quintessa.

It is unfortunate that such safeguards are necessary, but that is the only way to protect Quintessa and its business from the false attacks made by Plaintiff.

---

[3]      Defendants note that the litigation privilege does not extend to communications with non-parties. *Faltermeier v. FCA US LLC*, 4:15-CV-00491-DGK, 2016 WL 4771100, at \*6 (W.D. Mo. Sept. 13, 2016) (refusing to extend litigation privilege to communications to third-parties); *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 166, 788 N.E.2d 740, 749 (2003) (the privilege is not extended to communications persons without a connection to the lawsuit).

WHEREFORE, for the reasons stated above, Quintessa respectfully requests the Court to enter an order barring Plaintiff from receiving any discovery regarding Quintessa's clients, or alternatively, to impose strict safeguards on the use of any such information, as outlined above.

Respectfully submitted,

KHAZAELI WYRSCH, LLC

/s/ James R. Wyrsch
James R. Wyrsch, #53197
911 Washington Avenue, Suite 211
St. Louis, Missouri 63101
james.wyrsch@kwlawstl.com
Phone No. (314) 288-0777
Fax No. (314) 400-7701

*Attorney for Quintessa LLC and Lauren Mingee*

7