UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERB LEGAL INVESTMENTS, LLC, | ) |
| | ) |
|     Plaintiff and | ) |
|     Counterclaim defendant, | ) |
| | ) |
| v. | ) No. 4: 20 CV 1255 DDN |
| | ) |
| QUINTESSA, LLC, | ) |
| | ) |
|     Defendant, and | ) |
|     Counterclaim plaintiff, and | ) |
| | ) |
| LAUREN MINGEE (AKA "LAUREN | ) |
| MCNEIL," AKA "LAUREN VON") | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Quintessa LLC's and Lauren Mingee's motions (1) to dismiss Counts 2 and 3 of the Second Amended Complaint (Doc. 68) and (2) for a protective order (Doc. 70), as well as plaintiff ERB Legal Investments LLC's (3) motion to compel (Doc. 74). The Court has determined to rule these motions without further argument by the parties. However, at the hearing now set for November 2, 2021, at 1:00 p.m., the Court will take up with the parties the need to reschedule further proceedings in this case. *See* Plaintiff's motion to amend the scheduling order, Doc. 56.

## BACKGROUND

Plaintiff alleges the following facts in its Second Amended Complaint. (Doc. 63.) On April 21, 2020, plaintiff and defendant entered into a Marketing Agreement ("Contract"), wherein "[d]efendant would provide its 'bulk marketing' services for [p]laintiff and provide its 'full service platform' in marketing for, screening, qualifying, and signing 'plaintiffs' involved in motor vehicle collisions for representation." (*Id*. at 1-2.) Plaintiff was required to and did pre-fund the marketing account with $50,000.00; thereafter, defendant had possession

of any prepaid and yet unearned funds.  Defendant tracked all individuals it contacted on behalf of plaintiff in a real-time Google document.  Plaintiff was granted read-only access to the Google document, although it could use the "disengage" button and use a note field. (*Id*. at 3.) Defendant failed to fulfill its duty of prequalifying all potential "plaintiffs" to ensure they met the minimum criteria for verification of insurance before signing them to plaintiff's contingency fee contracts. (*Id*.)

The amended complaint further alleges that on May 14, 2020, in a phone conversation, plaintiff's owner and defendant Mingee discussed the unqualified "plaintiffs," and plaintiff agreed to help qualify insurance while indicating that it took longer than the 144 hours within which plaintiff was required to disengage plaintiffs. (*Id*.) "Defendants stated that 'extensions' for insurance would be granted and that it would not be a problem." (*Id*. at 3-4.)  After the May 14 conversation, plaintiff emailed to defendant Quintessa a new retainer contract form that contained a notice to prospective clients stating that their being accepted by plaintiff as clients was conditioned upon insurance coverage.  (*Id*. at 4.)  In reliance upon the May 2020 phone call, defendant Quintessa continued to sign up "plaintiffs" when there initially appeared to be no insurance available. (*Id*. at 5.)  Over the next two months, defendant Quintessa continued to sign up both qualified and unqualified "plaintiffs" on the old retainer contract instead of the new one, and deducted funds from plaintiff's account.  During this time, defendant Quintessa did not disclose to plaintiff that it required plaintiff to obtain defendant's permission to qualify cases beyond the 144 hours on a case-by-case basis.  (*Id*.)

Plaintiff alleges that it determined that approximately 29 cases were not qualified due to insurance.  Defendant Quintessa ignored plaintiff's requests that these 29 cases be disengaged.  Over the course of two to three months, plaintiff emailed defendant about the cases that were not properly disengaged.  On July 20, 2020, plaintiff determined that it had engaged 82 "plaintiffs" from defendant, but defendant billed the account for 111 "plaintiffs." (*Id*. at 9.)

Plaintiff alleges that on July 17, 2020, it notified defendant Quintessa that it had materially breached the Contract and gave it until July 24, 2020, to cure the breach.  (*Id*. at 9-10.)  On July 23, 2020, defendant gave plaintiff notice that it would file a lawsuit against

– 2 –

plaintiff. (*Id*. at 11.) Defendant cancelled plaintiff's account. (*Id*.) Plaintiff demanded the return of all unearned funds to plaintiff, which defendants did not. (*Id*. at 12.)

In its Second Amended Complaint, plaintiff asserts claims against defendant Quintessa for breach of contract (Count 1) and fraud (Count 2). Plaintiff also seeks to pierce the corporate veil to hold defendant Mingee personally liable for plaintiff's damages (Count 3). (*Id*. at 12-18.)

## MOTION TO DISMISS

Defendants move to dismiss Counts 2 and 3 and to dismiss defendant Mingee as a party. (Doc. 68.) Defendants argue that plaintiff failed to plead fraud with particularity in Count 2 and failed to state a claim for piercing the corporate veil in Count 3.

A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stating a plausible claim for relief requires the plaintiff to allege the circumstances of the alleged incident, and in reviewing the complaint, the Court is required to draw upon its experience and common sense. *Id.* at 679. The Court must assume the well-pleaded facts are true, but the Court does not have to accept as true merely general statements about what the law requires or prohibits. *Id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough) (citing *Twombly*, 550 U.S. at 555).

### A.   Fraud

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[T]he complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). The complaint must provide the "who, what, where, when, and how" of the alleged fraud. *Id*. "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading."

*United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). "Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Id*. "Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." *Drobnak*, 561 F.3d at 783. However, when the facts constituting the fraud are peculiarly within the opposing party's knowledge, the allegations may be pleaded on information and belief. *Id*. at 783-84.

In Count 2, plaintiff alleges that defendants made representations to plaintiff that led it to believe it would have more than 144 hours to verify insurance coverage for engaged or unengaged "plaintiffs." In paragraph 19 of its complaint, plaintiff describes the phone call with defendant Mingee on May 14, 2020, wherein defendants allegedly made its representations regarding extensions. (Doc. 63.)[1] Plaintiff's complaint provides the who, what, when, where, and how of the alleged fraud, and thus meets the requirements of Rule 9(b). Defendants also argue that plaintiff, a law firm, claims that it did not understand the process for requesting an extension, despite the contractual language stating that extensions would not be provided unless otherwise agreed upon in writing by defendant Quintessa. Defendants' argument relates to the merits of the claim and not whether plaintiff met the requirements of Rule 9(b).

Plaintiff also alleges, upon information and belief, that defendants engaged "plaintiffs" that they "expressly knew were unqualified," without any reasonable belief they could or would be qualified, and that defendants in some instances "fabricated evidence to make the 'plaintiff' appear to be qualified when in fact they were not." (Doc. 63 ¶ 91.) Defendant argues that plaintiff's allegations are conclusory and that the facts related to the leads are equally available to plaintiff, causing plaintiff's pleading upon information and belief to fall short of Rule 9(b)'s requirements.

The allegation that defendants "expressly knew" that potential "plaintiffs" were unqualified meets *Drobnak*'s standard, as the facts regarding what defendants knew about the

---

[1] Contrary to defendants' assertion, plaintiff does not acknowledge that the parties did not agree on a "blanket extension." (Doc. 69 at 2.) Rather, plaintiff's complaint quotes defendant Quintessa's attorney, who provided his analysis of the May 14 phone call. (Doc. 63 ¶ 68.)

qualifications of "plaintiffs" are peculiarly within defendants' knowledge. The allegation that defendants fabricated evidence, however, does not meet the *Drobnak* standard. If defendants fabricated evidence to falsely establish the eligibility of a "plaintiff," defendants would have provided that evidence to plaintiff during the intake and screening process; therefore, the existence of fabricated evidence is not solely within defendants' knowledge. Plaintiff's allegation of fabricated evidence also fails to meet Rule 9(b)'s "who, what, when, where, and how" test. Other than its assertion in paragraph 91, plaintiff does not allege any facts in its complaint regarding fabricated evidence.

Lastly, plaintiff alleges upon information and belief that defendants "have engaged in this type of fraudulent conduct in the past with other firms." (Doc. 63 ¶ 103.) Plaintiff cites a case filed against defendant Quintessa in the United States District Court for the Eastern District of Wisconsin, alleging "fraudulent activities mirroring similar allegations as set forth" in plaintiff's complaint. (Doc. 63 ¶ 113; *Hupy & Abraham v. Quintessa LLC*, 2:21-cv-577 (E.D. Wis. 2021).) Defendants argue that the claim should be dismissed because plaintiff failed to plead its allegations with particularity, and the allegation of fraud in Wisconsin is based on defendant Quintessa's alleged false representation regarding the number of leads that it could generate.

The Court concludes that plaintiff has failed to plead past fraudulent conduct with sufficient particularity. Plaintiff alleges past fraudulent conduct by defendants upon information and belief but also cites the Wisconsin case, which plaintiff alleges involved a common scheme. Since the facts constituting the alleged past fraud are the subject of another lawsuit, they are not peculiarly within defendants' knowledge. Plaintiff's allegation of past fraud upon information and belief therefore fails to meet the requirements of Rule 9(b).

**B.    Piercing the Corporate Veil**

Defendants argue that defendant Mingee and Count 3 of plaintiff's Second Amended complaint should be dismissed because plaintiff makes conclusory allegations upon information and belief, with no facts to support its claims. (Doc. 69 at 4.) Plaintiff argues that it has met the standard set out in Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. 72 at 15.)

"Ordinarily, a corporation is regarded as a separate legal entity, separate and distinct from its stockholders, officers, and directors, with separate and distinct liabilities and obligations." *Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354, 370 (Mo. Ct. App. E.D. 2015). In order to pierce the corporate veil, the plaintiff must plead:

> 1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> 2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> 3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*Bick v. Legacy Building Maintenance Co. LLC*, 626 S.W.3d 700, 705 (Mo. Ct. App. E.D. 2021).

Plaintiff's complaint alleges that defendant Mingee has incorporated at least seven different entities that provide the same services as defendant Quintessa; that one or more of those entities has been involved in litigation; and that at least one of those entities has been dissolved. (Doc. 63 ¶¶ 108, 111, 112). In support of its contention that defendant Mingee had complete domination of the company, plaintiff cites its May 14, 2020, conversation with defendant and alleges that defendant gave an employee a directive not to provide disengagement credits. (Doc. 63 ¶¶ 19, 57.)

Accepting all of plaintiff's allegations as true, the Court concludes that plaintiff has failed to state a claim for piercing the corporate veil. Other than a telephone conversation and a direction to an employee not to provide disengagement credits for unqualified "plaintiffs," plaintiff does not allege any facts sufficient to show that defendant Quintessa had no separate mind, will, or existence of its own. Additionally, incorporation by defendant Mingee of other entities that provide the same or similar service as defendant Quintessa does not support plaintiff's contention that defendant Mingee has complete domination over Quintessa and its affiliates.

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Defendant Quintessa moves for a protective order barring plaintiff from discovery of defendant's client information or, in the alternative, an order imposing strict safeguards on the use of that information. (Doc. 70.)

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.,* 160 F.3d 428, 431 (8th Cir.1998). To determine if a matter is discoverable, the analysis may require the court to first determine whether the sought discovery is relevant to a claim or defense. *Heller v. HRB Tax Group, Inc.*, 287 F.R.D. 483, 485 (E.D. Mo 2012). The phrase "relevant to the subject matter involved in the pending action" has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 351, (1978). "However, although the standard of relevance in the context of discovery may be broader than in the context of admissibility, 'this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery.'" *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.,* 2012 WL 1620506, at *3 (E.D.Mo. May 9, 2012).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26 requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Vallejo v. Amgen, Inc.*, 903 F.3d 773, 743 (8th Cir. 2018).

In support of its motion for protective order, defendant Quintessa provides an email exchange between defense counsel and plaintiff's counsel in which plaintiff's counsel confirms that it will not disclose what it plans to do with the client list, the questions counsel will ask the clients, or the information counsel will impart to the clients. Plaintiff's counsel also refused to discuss using a third party to conduct interviews or using court-approved questionnaires. (Doc. 71, Ex. 2.) Defendant argues that it will suffer irreparable harm if plaintiff is able to obtain defendant's client list without any safeguards, alleging that plaintiff

will harass defendant's clients and poison them against defendant. (Doc. 71 at 1.) Defendant points out that plaintiff is represented in this matter by its sole owner and contends that plaintiff has a personal stake in the litigation. (*Id*. at 5.) If the Court allows discovery of defendant's clients, defendant proposes three safeguards: requiring the information to be considered "Attorneys' Eyes Only" and allow only Page Law LLC, not The Bradley Law Firm, to view the information or contact defendant's clients; requiring any communication with the clients to be in writing and pre-approved by defendant and/or the Court; and requiring that any oral communications, if allowed, be provided to defendant. (*Id*. at 6.)

Plaintiff's counsel argues that the proposed discovery is relevant and that he is aware of his ethical duties, so no protective order is needed. Further, he argues that defendant's proposed protective order is overbroad and impermissibly infringes on attorney work product, as it allows defendant to discover plaintiff's investigatory methods. (Doc. 73.)

The requests for production are relevant to plaintiff's claim of fraud, so the Court will not bar discovery of defendant Quintessa's clients. However, the Court finds that there is good cause for a protective order due to the possibility of irreparable harm to defendant's business if plaintiff is allowed to contact defendant's clients without safeguards. The Court will enter a protective order directing defendant to produce client information, designated "Confidential – Attorneys' Eyes Only," limited to plaintiff's counsel, attorneys Bradley and Lammert. Plaintiff's counsel must prepare a written questionnaire directed to defendant's clients, which is to be submitted for approval by defendant. Plaintiff's counsel must have no other communication, written or oral, with defendant's clients, except as approved by defendant. Any objection of defendant to plaintiff's proposed questionnaire or other communication must be submitted to the Court for consideration.

### **PLAINTIFF'S MOTION TO COMPEL**

Plaintiff moves to compel responses to interrogatories 15 and 19 and requests for production 9, 24-25, and 28-33. (Doc. 74.) Interrogatories 15 and 19 and requests for production 9 and 24-25 are the subject of defendant's motion for protective order.

In requests for production 28-33, plaintiff seeks electronic discovery concerning call recordings and emails to and from the at-issue "plaintiffs." Plaintiff asserts that defendant has acknowledged the existence of phone recordings and that defendant sends electronic contracts

to potential clients. It requests sanctions for the failure to preserve evidence, including a spoliation inference, exclusion of certain evidence from defendant, or entry of judgment in favor of plaintiff. (*Id*.) Defendant states that it contacted its vendor, Talkdesk, which said that any phone recordings with potential clients have been deleted and are not recoverable. Defendant also states that it sends contracts via its intake system, not email, and it does not email leads; therefore, defendant asserts that it has no documents to provide in response to plaintiff's requests. (Doc. 78.)

Plaintiff requested backup tapes or media "containing email and other electronic data related to this action" during the time defendant Quintessa provided services to plaintiff. (Doc. 55, Ex. 2 at 11.) In its response to plaintiff's motion to compel, defendant Quintessa asserts that it does not email leads, as contracts are sent through defendant's intake system. Defendant has not offered a rationale for refusing to provide contracts or other data sent through the intake system and requested by plaintiff. The motion to compel is sustained as to this request for production other-than-email material only.

"The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032 (8th Cir. 2007). Defendant Quintessa states that its vendor, Talkdesk, deleted any phone recordings related to the case, and deleted files are not recoverable. Defendant does not explain why Talkdesk deleted the phone recordings. Plaintiff's request for sanctions for failure to preserve the evidence is premature, as the record is unclear as to why Talkdesk deleted the recordings and how plaintiff was prejudiced by the deletion. The Court will not enter sanctions at this time, but plaintiff's motion to compel discovery regarding the other-than-email materials is sustained.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of defendants Quintessa, LLC and Mingee to dismiss Count 2 of plaintiff's Second Amended Complaint **(Doc. 68) is sustained** only as to the claims of fabricated evidence and past fraudulent conduct.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss Count 3 and defendant Mingee (Doc. 68) is **sustained**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (Doc. 68) is otherwise **denied**.

**IT IS FURTHER ORDERED** that the motion of defendant Quintessa, LLC for a protective order (Doc. 70) is **sustained** as follows: defendant must produce client information, designated "Confidential – Attorneys' Eyes Only" for plaintiff's counsel Edward Bradley, Esq., and Anna Lammert, Esq. only.  Plaintiff's counsel must prepare a written questionnaire directed to defendant's clients, to be submitted for review by defendant.  Plaintiff's counsel must not have any other communication, oral or otherwise, with defendant's clients, except as approved by defendant.

**IT IS FURTHER ORDERED** that plaintiff's second motion to compel responses to interrogatories and requests for production (Doc. 74) is **sustained**.

**IT IS FURTHER ORDERED** that the motion to amend the scheduling order will be taken up during the status hearing set for November 2, 2021, at 1:00 p.m.

                                                                         /s/ David D. Noce
                                            **UNITED STATES MAGISTRATE JUDGE**

Signed on October 18, 2021.