UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERB LEGAL INVESTMENTS, LLC,          )<br>                                                               )<br>          Plaintiff and                                 )<br>          Counterclaim defendant,             )<br>                                                               )<br>          v.                                                 )<br>                                                               )<br>QUINTESSA MARKETING, LLC,        )<br>                                                               )<br>          Defendant, and                           )<br>          Counterclaim plaintiff.                )  | No. 4: 20 CV 1255 DDN |

### MEMORANDUM AND ORDER

This matter is before the Court on several motions:

(a)   the motion of defendant Quintessa Marketing, LLC to compel (Doc. 104);

(b)   the motions of defendant for order to show cause (Docs. 106 and 113);

(c)   the motions of plaintiff ERB Legal Investments, LLC for relief from the protective order (Docs. 109, 117, and 118);

(d)   the motions of plaintiff for leave to file under seal (Docs. 110 and 119).

The Court heard argument on several of the motions on April 1, 2022. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### MOTION TO COMPEL

Defendant moves to compel plaintiff's responses to six interrogatories and five requests for production. (Doc. 104.) In its counterclaim, it alleges that plaintiff committed fraud by disengaging leads within plaintiff's system but later settling the claims of the disengaged leads. (Doc. 105 at 1.) Defendant seeks information related to its own fraud allegations, as well as information regarding plaintiff's claim of breach of contract. (*Id*.) Plaintiff responds that defendant cannot make a threshold showing of fraud, and its

attempts to obtain discovery are a fishing expedition. (Doc. 121 at 6.) It asserts that "[t]he only thing that [defendant] apparently relies upon is an unauthenticated, undated, inadmissible hearsay statement from" the mother of a disengaged lead, "which [is] factually incorrect." (*Id.*) Defendant contends in reply that it investigated the statement by the mother of the disengaged lead, which gave it a good faith belief that plaintiff committed fraud. (Doc. 124 at 1.)

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.,* 160 F.3d 428, 431 (8th Cir.1998). "To determine if a matter is discoverable, the analysis may require the court to first determine whether the sought discovery is relevant to a claim or defense." *Heller v. HRB Tax Group, Inc.*, 287 F.R.D. 483, 485 (E.D. Mo. 2012). The phrase "relevant to the subject matter involved in the pending action" has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 351 (1978). "However, although the standard of relevance in the context of discovery may be broader than in the context of admissibility, 'this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery.'" *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2012 WL 1620506, at *3 (E.D. Mo. May 9, 2012).

In Interrogatory 2, defendant seeks information regarding any leads sent to plaintiff by defendant that plaintiff referred to another lawyer or law firm. (Doc. 105-1 at 2.) In Interrogatory 3, defendant seeks information regarding every law firm or lawyer to whom plaintiff referred a lead, client, or case since April 21, 2020. (*Id.*) Defendant contends that the information is relevant to its fraud claim and that it has a right to discover if plaintiff referred any disengaged leads to other counsel. (Doc. 105 at 3.) Plaintiff responds that Interrogatories 2 and 3 are overbroad, as it had the prerogative to pay for a lead and then refer it to another firm. (Doc. 121.) In reply, defendant reiterates that it has the right to

2

conduct third-party discovery and that it would agree to the information being subject to a protective order. (Doc. 124 at 1.)

The requested information is relevant to defendant's claim that plaintiff fraudulently identified leads as "disengaged" while continuing to represent them. As defendant notes, if plaintiff referred a purportedly disengaged lead to another firm, it could have profited from a resulting settlement. Additionally, the Court recognizes that it ordered defendant to produce to plaintiff its client list, pursuant to a protective order. The Court concludes that defendant's request is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff must respond to Interrogatories 2 and 3 pursuant to the following protective order: the response must be designated "Confidential – Attorneys' Eyes Only," for defendant's counsel James Wyrsch.

In Interrogatories 4 and 5, defendant seeks information regarding every lead generation and marketing service or entity that plaintiff has utilized. (Doc. 105-1 at 2-3.) Defendant contends that plaintiff's relationships with other lead generation services are relevant to its fraud claim; specifically, defendant asserts that plaintiff contracted with another lead generation company, accepted leads, and demanded a refund. (Doc. 105 at 4.) Plaintiff acknowledges that the Court allowed it to discover defendant's client list pursuant to a similar discovery request, but it contends that defendant has not made a threshold showing of similar conduct. (Doc. 121 at 8.) Plaintiff does not respond to defendant's assertion that it has, on at least one other occasion with a different lead generation company, received leads before requesting a refund. (Doc. 105 at 4.)

Plaintiff contends that the Court allowed it to discover defendant's client list because it "provided evidence of another lawsuit filed by a [client of defendant] alleging fraud in connection with the same or similar lead generation product." (Doc. 121 at 8.) This argument mischaracterizes the Court's previous order. The Court considered the existence of another lawsuit in its analysis of defendant's motion to dismiss, but not in the context of a discovery request. (*See* Doc. 82 at 4, 7-8.) Rather, the Court stated that "[t]he requests for production are relevant to plaintiff's claim of fraud, so the Court will not bar discovery of defendant Quintessa's clients." (*Id*. at 8.) Likewise, here, defendant requests

3

information regarding plaintiff's relationships with other lead generation and marketing services. Plaintiff's relationships with and past practices with such entities are relevant to its claim, so the Court sustains defendant's motion to compel Interrogatories 4 and 5.

In Interrogatories 6 and 7, defendant seeks information regarding any accusations or lawsuits alleging that Ryan Bradley and/or plaintiff engaged in fraud, libel, slander, and/or defamation. (Doc. 105-1 at 3.) Defendant argues that plaintiff has made numerous false allegations against defendant, and it has a right to discover accusations of similar behavior, as it goes to Mr. Bradley's credibility. (Doc. 105 at 4.) Defendant also notes that the Court permitted plaintiff to send questionnaires to defendant's former clients soliciting information regarding disputes, so it should be permitted to discover similar information from plaintiff itself. (*Id*. at 4-5.) Plaintiff contends that defendant has not alleged libel, slander, or defamation, so information regarding such accusations is irrelevant. (Doc. 121 at 8.) The Court concludes that the requested discovery is relevant to Mr. Bradley's credibility and character for truthfulness; it sustains defendant's motion as to Interrogatories 6 and 7.

Defendant's Request for Production 1 requests all documents, correspondence, or communication supporting the reasons for which plaintiff disengaged leads sent by defendant. (Doc. 105-2 at 1.) Defendant states that plaintiff agreed to a modified request to "produce all documents, correspondence, or communications with disengaged leads and/or Quintessa regarding the reasons for which you disengaged the leads you received from Quintessa." (Doc. 124 at 5.) Plaintiff has not supplemented its response. (*Id*.) Rather, plaintiff states that it will produce the discovery in response to the modified request if defendant "makes a requisite showing that it has a good faith belief" that plaintiff improperly referred or profited from disengaged leads. (Doc. 121 at 9.)

Plaintiff does not cite any Federal Rule of Civil Procedure or case law to support its contention that defendant must show a factual basis or good faith belief underlying its discovery request. Request for Production 1 is relevant to defendant's fraud claim and its defense of plaintiff's breach of contract claim. The Court sustains defendant's motion to compel as to Request for Production 1.

4

Request for Production 2 requests documents, statements, communications, and other evidence supporting plaintiff's claim that defendant provided a blanket extension of time to disengage leads for lack of insurance coverage. (Doc. 105-2 at 1.) Plaintiff's response to the request referenced several previously produced documents, but it has not confirmed whether all responsive documents have been produced. (Doc. 124 at 5.) Plaintiff argues that it properly responded to the request, and it is not required to state within its answer that it has produced all documents responsive to the request. (Doc. 121 at 10.)

Plaintiff objected to Request for Production 2 on the basis that it is overbroad and vague, but it provided a narrative response subject to its objection that referenced two previously produced documents. (Doc. 105-2 at 1-2.) Because plaintiff maintains the objection and responds only "subject to and without waiving" its objection, defendant's conclusion that the response is incomplete is reasonable. The requested documents are relevant to defendant's defense of plaintiff's fraud claim. The Court sustains defendant's motion as to Request for Production 2.

Request for Production 3 requests correspondence and documents concerning any disputes between plaintiff and any lead generation or marketing service identified in Interrogatory 4 or 5. (Doc. 105-2 at 2.) Defendant contends that plaintiff's history with lead generation and marketing services is relevant to its claims, and plaintiff's assertion that the information is trade secret does not bar discovery. (Doc. 124 at 6.) Plaintiff reasserts the arguments it made with respect to Interrogatories 4 and 5. (Doc. 121 at 11.) For the same reasons the Court sustained defendant's motion to compel as to Interrogatories 4 and 5, it sustains its motion with respect to Request for Production 3.

Request for Production 4 requests documents regarding all settlement payments, referral fees, and contingency fees paid to plaintiff since April 21, 2020, the name of each client for which payment was made, and the source of each payment. (Doc. 105-2 at 3.) Plaintiff states that it will reply if defendant amends its request to "all plaintiffs that ERB disengaged or attempted to disengage." (Doc. 121 at 11.) Defendant argues that the requested discovery is relevant to its fraud claim, the defense of plaintiff's breach of

5

contract claim, and damages; it maintains its request for information related to all leads sent by defendant. (Doc. 124 at 6-7.)

Defendant does not provide its reasoning for requesting payment and fee information for all leads, rather than disengaged leads. Similarly, plaintiff does not provide its reasoning for referring to the potential clients as "plaintiffs" rather than "leads;" it refers to the potential clients as "leads" elsewhere in its brief. (*See* Doc. 121 at 9.) The Court sustains defendant's motion subject to the following protective order: plaintiff must produce, for all leads that plaintiff disengaged or attempted to disengage, documents sufficient to identify (a) all settlement payments, referral fees, and/or contingency fees paid to or promised to be paid to plaintiff since April 21, 2020; (b) the name of each client for which payment was made or promised; and (c) the source of each payment. The material must be designated "Confidential – Attorneys' Eyes Only," for defendant's counsel James Wyrsch.

Request for Production 5 requests all communications with and/or regarding any person listed on a document produced by defendant entitled "8 – Bradley Law firm leads.xlsx." (Doc. 105-2 at 3.) Defendant contends that plaintiff's suit is premised on the allegation that many of the leads provided by defendant did not meet the qualifications specified in the contract. (Doc. 105 at 7.) It argues that attorney-client privilege does not protect all attorney-client communications, so plaintiff should be required to produce all non-privileged communications as well as a privilege log for arguably privileged communications. (*Id*.) Plaintiff reasserts its argument as to Interrogatory 3. (Doc. 121 at 11.)

Interrogatory 3 relates to law firms to which plaintiff has referred a lead; plaintiff argues that such information is trade secret and requests that the Court order production subject to a protective order. (Doc. 121 at 7.) Plaintiff does not otherwise argue against defendant's Request for Production 5. The Court sustains defendant's motion to compel as to Request for Production 5, subject to the following protective order: the material must be designated "Confidential – Attorneys' Eyes Only," for defendant's counsel James

6

Wyrsch, and plaintiff must provide a privilege log for any arguably privileged communications, consistent with Fed. R. Civ. P. 26(b)(5).

## MOTIONS FOR ORDER TO SHOW CAUSE

"One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (citing *United Mine Workers v. United Mine Workers*, 330 U.S. 258, 290 n. 56 (1947)). "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Id*. at 505. "The party seeking civil contempt bears the burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order, and that the violation was not based on a good faith and reasonable interpretation of the protective order." *Hunter Eng'g Co. v. Hennessy Indus., Inc.*, No. 4:08 CV 465 DDN, 2010 WL 1186454, at *5 (E.D. Mo. March 29, 2010) (citations omitted). Appropriate sanctions for contempt include attorney's fees and fines. *Schoenfeld v. Kleiber*, No. 07-4020-CV-C-NKL, 2007 WL 3256234, at *2 (W.D. Mo. Nov. 2, 2007).

Defendant's first motion for order to show cause arises out of communications between plaintiff and recipients of plaintiff's questionnaire. (Doc. 106.) Plaintiff's counsel informed defendant's counsel that it received three phone calls in response to the questionnaire, including one individual that wished to retain plaintiff's counsel to pursue a claim against defendant. (Doc. 106-1 at 11.) When defendant's counsel requested more information about the conversation, plaintiff's counsel did not provide a substantive response. Rather, he indicated that his staff had been properly advised on how to handle calls in connection with the questionnaire in accordance with the Court's order. (*Id*. at 7.) Defendant argues that plaintiff's disclosure of a request for representation by a client of defendant shows that plaintiff's counsel has violated the Court's order. (Doc. 106 at 4.)

In response, plaintiff contends that it informed callers that plaintiff's counsel could not speak to them, refused to provide substantive information to callers, and promptly

7

informed defendant's counsel of every contact with questionnaire respondents. (Doc. 107 at 1.) It emphasizes that plaintiff's counsel did not have any communication with defendant's clients following the Court's entry of the October 18, 2021, protective order. (*Id*. at 2-3.) It argues that it should not be faulted for allowing its staff to inform callers that it could not provide a substantive response to their questions and to politely listen to the callers' responses. (*Id*.) Lastly, it moves for sanctions under Federal Rule of Civil Procedure 11, arguing that defendant's motion is baseless, misstates the Court's orders, and is brought for no other purpose than to harass plaintiff. (*Id*. at 3.)

Defendant argues in reply that a lawyer's staff members are agents of the lawyer, so plaintiff cannot contend that the protective order only applies to plaintiff's counsel and not his staff. (Doc. 122 at 1.) It contends that plaintiff's counsel's evasive responses to defendant's counsel's inquiries raise concerns about plaintiff's counsel's adherence to Court orders. (*Id*. at 3.) It requests the Court to clarify that this Court's order applies to plaintiff's counsel's staff, to conduct a hearing so a record can be made of the conversation, to order plaintiff's counsel to disclose whether the phone conversations were recorded, and if so, to order plaintiff's counsel to produce a copy of the recording for *in camera* review. (*Id*.)

The Court's order barring plaintiff's counsel from communicating with defendant's clients applies with equal force to counsel's staff. Missouri Rule of Professional Conduct 4-5.3(b) provides that "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." The Court admonishes plaintiff's counsel to ensure that his staff abide by the Court's protective order by promptly ending any phone calls with defendant's clients and directing them to jointly email counsel for both parties with any questions. (*See* Doc. 100 at 3.)

Defendant has not established by clear and convincing evidence that plaintiff's counsel or his staff violated the Court's order. The email exchanges between counsel indicate that plaintiff's counsel was forthcoming about calls from survey recipients. (*See* Doc. 106-1 at 9, 11.) The Court agrees that plaintiff's counsel's staff cannot control what

8

survey recipients say during a call. It is possible that the caller expressed interest in retaining plaintiff's counsel without solicitation or encouragement from the staff member that answered the call, even as the staff member attempted to end the call. Plaintiff's counsel promptly informed defendant's counsel of the calls and request for representation, and defendant's counsel does not contend the plaintiff's counsel has stopped otherwise cooperating. The Court concludes that the relief requested by defendant is not warranted at this time. Defendant's first motion for order to show cause is denied. However, the Court does not conclude that defendant's motion is baseless or brought with intent to harass, so plaintiff's motion for sanctions is denied.

Defendant's second motion for order to show cause (Doc. 113) arises out of plaintiff's motion for relief from the protective order and to set depositions (Doc. 109). That motion, which plaintiff did not initially move to file under seal, included the unredacted names of five clients from defendant's client list, which was produced to plaintiff pursuant to a protective order (Doc. 82). After defendant alerted plaintiff and the Court to the presence of the unredacted names and the violation of the protective order, the Court sealed the motion, and plaintiff filed a motion for leave to file under seal. (Doc. 110.) Defendant then moved for sanctions, arguing that the filing of the motion violated the Court's order and disclosed a trade secret. (Doc. 113.) Plaintiff did not respond to defendant's motion, but plaintiff's counsel disputed in an email to defendant's counsel that his motion violated "this Court order in any way." (Doc. 114-1 at 1.)

Defendant has met its burden to prove that plaintiff violated the protective order by failing to file under seal a motion with unredacted names. Plaintiff's counsel's assertion that the motion containing unredacted names did not violate the Court's order is not a good faith, reasonable interpretation of the protective order. The order states, in relevant part: "defendant must produce client information, designated "Confidential – Attorneys' Eyes Only" for plaintiff's counsel Edward Bradley, Esq., and Anna Lammert, Esq. only." (Doc. 82 at 10.) Names of clients squarely fit within the category of "client information."

Defendant shall be awarded its reasonable attorney's fees and expenses associated with bringing its second motion to show cause (Doc. 113). *See Kehm v. Procter & Gamble*

9

*Mfg. Co.*, 724 F.2d 630, 630 (8th Cir. 1984).  Defendant shall submit an affidavit supporting its attorney's fees by July 1, 2022.  Plaintiff may respond to the affidavit.  *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 71 (S.D.N.Y. 2007).

## MOTIONS FOR RELIEF FROM PROTECTIVE ORDER

Plaintiff seeks relief from the protective order to depose seven of defendant's clients and to provide a legal consultation and/or legal representation to a former client of defendant that received the questionnaire.  (Docs. 109, 117, and 118.)  Plaintiff also seeks clarity from the Court regarding the scope of its protective order and whether it prohibits communication with former clients, as well as counsel for current and former clients.  (Doc. 109 at 5.)  Lastly, because plaintiff wishes to provide substantive responses to inquiries, it requests that the Court issue an order directing the parties' response to questionnaire recipients that contact the parties' counsel.  (Doc. 118 at 2.)

Defendant opposes plaintiff's motions for relief.  It argues that dragging clients into the litigation causes harm to its business; plaintiff has not produced evidence of fraud in this case; the questionnaires have not elicited additional information and have been largely unreturned; and other, less intrusive means of discovery would provide relevant information.  (Doc. 123 at 2-5.)  It further contends that plaintiff should not be permitted to use discovery to solicit clients.  (*Id*. at 6-7.)  It asserts that the protective order clearly applies to current and former clients, and plaintiff should not be permitted to get around the protective order by speaking with clients' counsel, who are agents of the clients.  (*Id*. at 7-8.)

Federal Rule of Civil Procedure 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action . . ." Fed. R. Civ. P. 26(b)(1).  It further states that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

In creating the protective order at issue, the Court recognized that defendant's client list was relevant to plaintiff's claim of fraud. (Doc. 82 at 8.) The questionnaire was designed to allow plaintiff to discover defendant's relationships and business practices with other clients while also protecting defendant's business interests. Allowing plaintiff to depose questionnaire recipients that seek additional information but do not return the questionnaire would frustrate the purposes of the protective order and the questionnaire.

One recipient responded that his firm is party to a mutual non-disparagement and confidential settlement with defendant and is thus precluded from responding to inquiries absent court order. Because this recipient is prevented from responding to the questionnaire, the Court sustains plaintiff's motion for relief from the protective order as to this recipient. Plaintiff has not argued that any other recipient is precluded from responding to the survey, so its motion is denied as to the other six recipients.

Plaintiff also requests clarification regarding the scope of the protective order. As defendant notes, former clients may seek to reengage defendant, so defendant has an interest in protecting relationships with former clients. Additionally, "[a]s an agent of the client, an attorney acts as the client's alter ego and not for the attorney personally." *RehabCare Group East, Inc. v. Stratford Health Care Properties, LLC*, No. 14-0886-CV-W-FJG, 2016 WL 11469771, at *4 (W.D. Mo. Feb. 8, 2016) (quoting *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 176 (Mo. Ct. App. 1996)). Communicating with counsel acting on behalf of a client of defendant invokes the same concerns that gave rise to the protective order. Plaintiff is prohibited from directly contacting or responding to any clients, current or former, that it discovered through the client list, as well as counsel or any other representative for those clients.

Lastly, plaintiff requests direction from the Court regarding the parties' responses to recipients that request more information. As stated above, the questionnaire was designed to allow plaintiff to elicit discovery without communicating directly with defendant's clients. The Court does not perceive any reason to modify the protective order to allow plaintiff to offer substantive responses to recipients' inquiries, but it acknowledges that they may want to learn more about the case before responding to the questionnaire.

Recipients may access the public docket sheet through PACER.  To notify recipients of the case information, the parties must add the italicized language to their cooperative response to recipients:

> Thank you for reaching out to my law firm in response to the March 16, 2022 letter and questionnaire concerning Quintessa, LLC.
> Unfortunately, I cannot speak to you about this pursuant to Court Order.  *For more information regarding the lawsuit, you may access the docket sheet on PACER.  The case name is ERB Legal Investments D/B/A The Bradley Law Firm v. Quintessa, LLC, and the case number is 4:20-cv-1255.  Information regarding PACER can be found at https://pacer.uscourts.gov/.*  Further, the Court's Order requires both Mr. Wyrsch and myself to jointly respond to your inquiry, which is why Mr. Wyrsch is included on this communication.

## **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of defendant Quintessa, LLC to compel **(Doc. 104) is** sustained, subject to the following protective order:

(a)   Responses to Interrogatories 2 and 3: Material must be designated "Confidential– Attorneys' Eyes Only," for defendant's counsel James Wyrsch.

(b)   Request for Production 4: Plaintiff must produce, for all leads that plaintiff disengaged or attempted to disengage, documents sufficient to identify (a) all settlement payments, referral fees, and/or contingency fees paid or promised to be paid to plaintiff since April 21, 2020; (b) the name of each client for which payment was made or promised; and (c) the source of each payment.  The material must be designated "Confidential – Attorneys' Eyes Only," for defendant's counsel James Wyrsch.

(c)   Request for Production 5: The material must be designated "Confidential – Attorneys' Eyes Only," for defendant's counsel James Wyrsch.  Plaintiff must provide a privilege log for any arguably privileged communications; such privilege log must meet the requirements of Fed. R. Civ. P. 26(b)(5).

**IT IS FURTHER ORDERED** that defendant's first motion to show cause **(Doc. 106) is denied.**

**IT IS FURTHER ORDERED** that plaintiff ERB Legal Investments LLC's motion for sanctions **(Doc. 107) is denied.**

**IT IS FURTHER ORDERED** that the motions of plaintiff for relief from the protective order and to set depositions **(Docs. 109, 117, and 118) are sustained** only as to the questionnaire recipient, identified in the sealed motion, that is barred from responding to the questionnaire absent court order. The motions are otherwise **denied.**

**IT IS FURTHER ORDERED** that plaintiff is prohibited from directly contacting or responding to any of defendant's clients, current or former, or any counsel or representative for defendant's clients.

**IT IS FURTHER ORDERED** that defendant's second motion for order to show cause **(Doc. 113) is sustained.** Defendant shall be awarded its reasonable attorney's fees and expenses associated with bringing its second motion to show cause. Defendant shall submit an affidavit supporting its attorney's fees by July 1, 2022. Plaintiff may respond to the affidavit.

**IT IS FURTHER ORDERED** that plaintiff's motions for leave to file under seal **(Docs. 110 and 119) are sustained.**

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 27, 2022.