UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERB LEGAL INVESTMENTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 4:20-CV-1255 |
| QUINTESSA LLC, | ) | |
| | ) | Division No. |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## ERB LEGAL INVESTMENTS LLC'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

**COMES NOW** Plaintiff, ERB LEGAL INVESTMENTS LLC, by and through attorney E. Ryan Bradley of The Bradley Law Firm and for its Statement of Uncontroverted Material Facts states as follows to this Court:

1.      The "BULK MARKETING, FULL SERVICE PLATFORM AND GENERAL TRSM OF SERVICE" contract between ERB LEGAL INVESTMENTS, LLC (hereinafter "ERB") and Quintessa, LLC is attached hereto as Exhibit 1. *See* Exhibit 5, Paragraph 7, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC; Exhibit 1.

2.      Quintessa drafted the entire contract barring the handwriting modifying "cited At fault" to "At fault" on page 1 of the contract. *See* Exhibit 5, Paragraph 2, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC; Exhibit 1.

3.      Quintessa's solitary allegation of breach against ERB appears in paragraph 11, which states "Further, Defendant [ERB] failed to properly or timely disengage at least 32 leads

that it has not paid for (and thus owes Plaintiff for)" and in paragraph 13, Quintessa claims this failure to pay constitutes a "breach of the parties' Contract." *See* Doc#143, ¶11, 13.

4.      Quintessa then claims as a result of said breach that it "incurred damages in an amount in excess of $50,000." *See* Doc#143, ¶14.

5.      Yet in discovery, Quintessa states ERB owes Quintessa "$50,800 for 21 emailed leads that were never disengaged or paid for." *See* Exhibit 2, Quintessa's Fourth Supplemental Answers to Interrogatories, #10(d).

6.      Quintessa claims the 21 leads that ERB owes for are reflected in an exhibit produced by it called "11- Email Leads not disengaged (Quintessa 0190)." *See* Exhibit 3, 11-Email Leads not disengaged (Quintessa 0190).

7.      Pursuant to the express terms of the contract, ERB was only required to "pre-fund" the marketing campaign. *See* Exhibit 1.

8.      At all times, ERB did pre-fund the marketing account in accordance with the terms of the contract. *See* Exhibit 5, Paragraph 3, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

9.      ERB was never contractually required to *post*-fund the marketing account. That is, the parties never agreed that Quintessa would have the ability to spend *more* money than ERB had funded in its marketing account. *See* Exhibit 1.

10.     Pursuant to the terms of the contact, "Quintessa tracks and accounts for the funds each law firm has in its campaign at all times." *See* Exhibit 1.

11.     Quintessa had a contractual duty to notify ERB of "additional funding requirements" when ERB's account balance reached 10%. *See* Exhibit 1.

12.    Quintessa never notified ERB of any instance wherein its campaign account balance was in fact negative as a result of delivering more leads than ERB pre-funded.  *See* Exhibit 5, Paragraph 4, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

13.    Quintessa admits in its petition "[f]ollowing an internal audit, Plaintiff [Quintessa] learned that it had sent Defendant [ERB] far more leads than Defendant [ERB] has paid for." *See* Doc. #143, ¶10.

14.    ERB never had a contractual duty to "track and account" for the funds within the campaign account. *See* Exhibit 1.

15.    Quintessa had a contractual duty to  provide "prompt lead delivery … via email, portal notification and live call transfer." *See* Exhibit 1.

16.    By Quintessa's own admission, the 21 leads it claims it is owed money for were "emailed only." *See* Exhibit 3, 11- Email Leads not disengaged (Quintessa 0190).

17.    Amarion Winston never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Christian Winston." *See* Exhibit 5, Paragraph 5, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

18.    Miracle Winston never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Christian Winston." *See* Exhibit 5, Paragraph 6, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

19.     Ari'Yon Fields-Winston never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Christian Winston." *See* Exhibit 5, Paragraph 7, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

20.     Shaquille Jones never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Antwan Miller." *See* Exhibit 5, Paragraph 8, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

21.     Marcus Pratt Sr never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Eunique Cooper." *See* Exhibit 5, Paragraph 9, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

22.     Marcus Pratt Jr never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Eunique Cooper." *See* Exhibit 5, Paragraph 10, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

23.     Madison Pratt never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within

the "notes" section of a lead for "Eunique Cooper." *See* Exhibit 5, Paragraph 11, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

24.    Cracen Noah Ortega never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Manaha Ortega." *See* Exhibit 5, Paragraph 12, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

25.    Michael Davis never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Toni Lambert." *See* Exhibit 5, Paragraph 13, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

26.    Todd Morris never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Antonio Dickerson." *See* Exhibit 5, Paragraph 14, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

27.    Pahmel Archer never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Damarcus Mason." *See* Exhibit 5, Paragraph 15, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

28.    Travonna Fletcher never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Travorous Johnson." *See* Exhibit 5, Paragraph 16, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

29.    Leilani Purinton never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Tasha Downing." *See* Exhibit 5, Paragraph 17, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

30.    Remi Downing never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Tasha Downing." *See* Exhibit 5, Paragraph 18, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

31.    Zyler Downing never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead / plaintiff. Rather, his name only appeared within the "notes" section of a lead for "Tasha Downing." *See* Exhibit 5, Paragraph 19, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

32.    Tesfay Awalom never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that she was a separate lead. Rather, his name only appeared within the

"notes" section of a lead for "Eyob Okubay." *See* Exhibit 5, Paragraph 20, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

33.     Kyshon Brown never appeared as a separate lead within the portal with entries for "PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received portal notification that he was a separate lead. Rather, his name only appeared within the "notes" section of a lead for "Jayda Burkett." *See* Exhibit 5, Paragraph 21, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

34.     Per the contract [Exhibit 1], the leads that ERB turned down or disengaged were required to be done through the "portal." *See* Exhibit 5, Paragraph 22, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC; *See* Exhibit 1, page 2 stating "*Leads that you turn down or disengage, must be done by using the Quintessa Marketing portal in order to receive credit back to your campaign.*"

35.     ERB cannot disengage leads as contemplated pursuant to the contract [through the portal] if they are "emailed only" and do not appear within the "portal."  *See* Exhibit 5, Paragraph 23, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC;

36.     ERB had no method to individually turn down Amarion Winston through the portal. *See* Exhibit 5, Paragraph 24, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

37.     ERB had no method to individually turn down Miracle Winston through the portal. *See* Exhibit 5, Paragraph 25, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

38.     ERB had no method to individually turn down Ari'Yon Fields-Winston through the portal. *See* Exhibit 5, Paragraph 26, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

39.     ERB had no method to individually turn down Shaquille Jones through the portal. *See* Exhibit 5, Paragraph 27, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

40.     ERB had no method to individually turn down Marcus Pratt Sr through the portal. *See* Exhibit 5, Paragraph 28, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

41.     ERB had no method to individually turn down Marcus Pratt Jr through the portal. *See* Exhibit 5, Paragraph 29, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

42.     ERB had no method to individually turn down Madison Pratt through the portal. *See* Exhibit 5, Paragraph 30, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

43.     ERB had no method to individually turn down Cracen Noah Ortega through the portal. *See* Exhibit 5, Paragraph 31, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

44.     ERB had no method to individually turn down Michael Davis through the portal. *See* Exhibit 5, Paragraph 32, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

45.     ERB had no method to individually turn down Todd Morris through the portal. *See* Exhibit 5, Paragraph 33, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

46.     ERB had no method to individually turn down Pahmel Archer through the portal. *See* Exhibit 5, Paragraph 34, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

47.     ERB had no method to individually turn down Travonna Fletcher through the portal. *See* Exhibit 5, Paragraph 35, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

48.     ERB had no method to individually turn down Leilani Purinton through the portal. *See* Exhibit 5, Paragraph 36, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

49.     ERB had no method to individually turn down Remi Downing through the portal. *See* Exhibit 5, Paragraph 37, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

50.     ERB had no method to individually turn down Zyler Downing through the portal. *See* Exhibit 5, Paragraph 38, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

51.     ERB had no method to individually turn down Tesfay Awalom through the portal. *See* Exhibit 5, Paragraph 39, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

52.    ERB had no method to individually turn down Kyshon Brown through the portal. *See* Exhibit 5, Paragraph 40, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

53.    Quintessa contractually agreed to provide ***pre-qualified*** personal injury leads to The Bradley Law Firm as a condition precedent to deducting money for those leads from ERB's marketing account. *See* Exhibit 1 (emphasis added).

**Details of Services Provided by Quintessa Marketing:**
Beginning on the effective date, 04/20/2020 , QUINTESSA MARKETING will begin to deliver Personal Injury leads in Missouri to The Bradley Law Firm.

QUINTESSA MARKETING will provide pre-qualified leads to The Bradley Law Firm. Prompt lead delivery is provided via email, portal notification and live call transfer.

The Marketing Campaigns are pre-funded with an initial payment of $50,000.
Tier 1/Tier 2 leads are deducted from the funded amount at the time of lead delivery.

54.    The pre-qualification criteria per the contract was a) either a "Motor Vehicle Accident" in Missouri for $2000 per Plaintiff [Tier 1] or a "Commercial Policy / Motor Vehicle Accident Injury" in Missouri for $4200 per Plaintiff [Tier 2], and b) could not be at fault, c) property damage could not be under $1500, and d) Defendant could not be uninsured or no PC UIM [meaning no "potential client" "underinsured motorist coverage"] and e) must have obtained medical treatment within 14 days of injury. *See* Exhibit 1.

| Lead Tier | Description | Price | Territory |
|---|---|---|---|
| Tier 1 | Motor Vehicle Accident | $2,000 per Plaintiff | Missouri |
| Tier 2 | Commercial Policy/Motor Vehicle Accident Injury | $4,200 per Plaintiff | Missouri |



Turndowns and Disengagements
Approved reasons for turning down or disengaging a lead, unless otherwise agreed by
Quintessa Marketing are as follows:
- ~~Client~~ At fault
- Property Damage under $1,500
- Defendant Uninsured and no PC UM
- No medical treatment within 14 days of injury

See Exhibit 1.

55.    Quintessa admits in its answers to Interrogatories the following were pre-qualification intake criteria: "…when attempting to prequalify a lead, Quintessa communicates with the potential client, asking detailed questions about a person's accident, any insurance information that is known, determinations of fault, status of injuries and medical treatment, and whether the case might implicate a commercial enterprise or insurance policy." *See* Exhibit 2, Quintessa's Fourth Answers to Interrogatories, #11(e).

56.    Interrogatory #11(f) asked Quintessa "for each Lead, identify how Quintessa determined the Lead was pre-qualified per the terms of the Contract, describing in detail each qualifying fact."

57.    Quintessa responded to Interrogatory #11(f) in relevant part: "Quintessa objects to Interrogatory #11(f) as it is vague and ambiguous. Quintessa further objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign," "6 – Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding

disengagement of clients," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009- 0189)." For further answer, for each lead that is in dispute in this case, Quintessa determined that the lead met its qualification criteria by analyzing the information provided by the potential client."

58.     None of the material identified in paragraph #57 above establishes that any of the leads identified in Exhibit 3 were pre-qualified. *See* Exhibit 6[1], "5 - Google Document prepared for Plaintiff's Campaign;" Exhibit 7, "6 – Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)" and Exhibit 8, "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)"

59.      ERB's duty to disengage a lead was only triggered upon the precedent condition that Quintessa deliver pre-qualified leads. *See* Exhibit 1.

60.     Every lead sent to ERB by Quintessa through the portal was entered into a lead system by ERB called "Law Ruler." *See* Exhibit 5, Paragraph 41, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

61.     There is no evidence that Amarion Winson was never pre-qualified by Quintessa for all contract criteria.

62.     Amarion Winson does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 42, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

63.     There is no evidence that Miracle Winston was ever pre-qualified by Quintessa for all contract criteria.

---

[1] Exhibit 6 was originally a Microsoft Excel file that was converted to PDF, which cannot accommodate the columns as originally formatted in Excel. Further, the functionality of Excel was lost in the conversion process. Counsel is happy to email the Court or file with the Court the excel version of this exhibit if requested.

64.     Miracle Winston does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 43, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

65.     There is no evidence that Ari'Yon Fields-Winston was ever pre-qualified by Quintessa for all contract criteria.

66.     Ari'Yon Fields-Winston does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 44, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

67.     There is no evidence that Jasmine Burns was ever pre-qualified by Quintessa for all contract criteria.

68.     Jasmine Burns does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 45, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

69.     There is no evidence that Antwan Miller was ever pre-qualified by Quintessa for all contract criteria.

70.     There is no evidence that Shaquille Jones was ever pre-qualified by Quintessa for all contract criteria.

71.     Shaquille Jones does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 46, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

72.     There is no evidence that Marcus Pratt was ever pre-qualified by Quintessa for all contract criteria.

73.     Marcus Pratt does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 47, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

74.     There is no evidence that Madison Pratt was ever pre-qualified by Quintessa for all contract criteria.

75.     Madison Pratt does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 48, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

76.     There is no evidence that Marcus Pratt, Jr. was ever pre-qualified by Quintessa for all contract criteria.

77.     Marcus Pratt, Jr. does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 49, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

78.     There is no evidence that Cracen Noah Ortega was ever pre-qualified by Quintessa for all contract criteria.

79.     Cracen Noah Ortega does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 50, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

80.     There is no evidence that Michael Davis was ever pre-qualified by Quintessa for all contract criteria.

81.     There is no evidence that Todd Morris was ever pre-qualified by Quintessa for all contract criteria.

82.    Todd Morris does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 51, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

83.    There is no evidence that Pahmel Archer was ever pre-qualified by Quintessa for all contract criteria.

84.    Pahmel Archer does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 52, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

85.    There is no evidence that Travorous Johnson was ever pre-qualified by Quintessa for all contract criteria.

86.    Travorous Johnson does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 53, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

87.    There is no evidence that Travonna Fletcher was ever pre-qualified by Quintessa for all contract criteria.

88.    Travonna Fletcher does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 54, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

89.    There is no evidence that Tasha Downing was ever pre-qualified by Quintessa for all contract criteria.

90.    Tasha Downing does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 55, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

91.     There is no evidence that Leilani Purinton was ever pre-qualified by Quintessa for all contract criteria.

92.     Leilani Purinton does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 56, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

93.     There is no evidence that Remi Downing was ever pre-qualified by Quintessa for all contract criteria.

94.     Remi Downing does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 57, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

95.     There is no evidence that Zyler Downing was ever pre-qualified by Quintessa for all contract criteria.

96.     Zyler Downing does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 58, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

97.     There is no evidence that Tesfay Awalom was ever pre-qualified by Quintessa for all contract criteria.

98.     There is no evidence that Kyshon Brown was ever pre-qualified by Quintessa for all contract criteria.

99.     Kyshon Brown does not appear in Law Ruler because Quintessa did not send this lead through the portal as required by the contract. *See* Exhibit 5, Paragraph 59, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

100.    Quintessa charged ERB for 40 non-commercial cases that were not pre-qualified, resulting in damages of $80,000. *See* Exhibit 4[2], ERBQ000774 (excel spreadsheet identifying in yellow highlight the 40 improperly non-commercial charged cases and the reason therefore). *See* Exhibit 5, Paragraph 60, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

101.    Quintessa charged ERB for 11 commercial cases that were not pre-qualified, resulting in damages of $46,200. *See* Exhibit 4, ERBQ000774 (excel spreadsheet identifying in green highlight the 11 improperly charged commercial cases and the reason therefore). *See* Exhibit 5, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

102.    Quintessa alleges it demanded payment from ERB for the leads it failed to properly or timely disengage, but ERB refused to make such payment. *See* Doc#143, ¶12.

103.    Quintessa never identified by name any plaintiffs / leads that ERB failed to "properly disengage" before it filed its lawsuit. *See* Exhibit 5, Paragraph 61, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

104.    Quintessa does not know when its "internal audit" began or ended when it came up with the 21 leads it seeks payment for. *See* Exhibit 2, Interrogatory 17.

105.    On May 9, 2020, it became readily apparent that Quintessa was not pre-qualifying leads per the terms of the agreement. This was especially true with regard to the insurance requirement. *See* Exhibit 5, Paragraph 62, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

106.    On May 9, 2020, attorney Patrick Hinrichs emailed Lauren V. Mingee concerning a lead "Mikke Blair" that following: "So there is no confirmation of insurance then. Cases should

---

[2] Exhibit 4 was originally a Microsoft Excel file that was converted to PDF, which cannot accommodate the columns as originally formatted in Excel. Further, the functionality of Excel was lost in the conversion process. Counsel is happy to email the Court or file with the Court the excel version of this exhibit if requested.

not be signed unless either the PC has insurance or they can give the actual name of Defendant's insurance. Just saying they believe there is insurance isn't enough." In response, Lauren v. Mingee, the owner of Quintessa, replied "***That is why we give extensions on finding proof of insurance.***" *See* Exhibit 6, ERBQ000017.

107.    After May 9, 2020, in reliance upon Quintessa's statement, ERB began investigating leads that Quintessa failed to pre-qualify for insurance. If leads turned out to be unqualified due to a lack of insurance, ERB disengaged the lead in reliance upon Quintessa's statement. *See* Exhibit 5, Paragraph 63, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

108.    On May 14, 2020, Ryan Bradley had a recorded telephone call with Lauren Mingee and Leo Mingee wherein the parties discussed Quintessa's signing unqualified leads who did not meet minimum criteria as called for in Exhibit 1 and outlining how the parties would move forward. In particular, the parties stated:

* Bradley reiterated there were 2 main issues: First, there were a lot of instances were ERB was having to qualify cases because Quintessa was not and we did not have the ability to qualify them within 144 hours. Second, Quintessa was qualifying cases as "commercial" when they were not. Exhibit 8, p. 3:8 – p. 4:7.

* Lauren Mingee acknowledges Quintessa does sign up some leads even though there is no proof of insurance (and why) and then specifically states "***And if we need to extend that window for insurance and for verification, that's not a problem****.*" Exhibit 8, p. 5:13-22. Ryan Bradley responds "ok." Exhibit 8, p. 5:13-23.

* Lauren Mingee stated Quintessa relies upon the law firms to help qualify the cases and that Quintessa extends if an accident just happened so that the law firm can get the police report.

Exhibit 8, p. 6:1-9. Ryan Bradley responds "yeah" and Mrs. Mingee confirms "**and that's not an issue.**" Exhibit 8, p. 6:10-11.

* Leo Mingee and Lauren Mingee then discuss Quintessa's granting of extensions for insurance for their other clients, to wit:

> LAUREN MINGEE: So I think, you know, with all of our people -- what is it -- you know, our guys in Texas and California, how long do we extend for insurance?
> LEO MINGEE: I don't think it's months. I mean --
> LAUREN MINGEE: No. I mean --
> LEO MINGEE: We'll -- we'll give like --
> And it's not like, Hey, this is a blanket, you're going to have an extra, you know, 14 days on top of the seven to verify insurance on every single one. It's like, Hey, you know, this one is potentially a great case, but I really -- like we want this one to work, but here's what we have -- here's what will have to pan out. And so if it's a reasonable point and it's like, okay, well, yeah, I mean, that makes sense.
> Exhibit 8, p.8:2-17.

* Lauren Mingee reiterated later in the conversation "… **we do give extensions on insurance**." Exhibit 8, p.9:16-17.

* Leo Mingee stated that Quintessa was unfamiliar with Missouri insurance laws and indicated "*And so, I mean, like as we learn more and more about, like, the intricacies of Missouri, we're going to be able to qualify based on those things and know beforehand that, you know, we're -- like, yeah, if this is dropped or it's (indiscernible) fight, we're -- we're kind of expecting it, but it does require some research to find out.*" Exhibit 8, p. 11:20 – p. 12:1.

* The parties discuss the cost of the leads and ERB's expectation that every lead will materialize into a case at that price point to which Lauren Mingee acknowledges and agrees, to wit:

> RYAN BRADLEY: Okay. You know, I guess I

just get a little worried because, like, these numbers, you know, 2,000 and 4200, you know, I -- I'm expecting that every single one of these cases at that price is going to materialize into a case that we can --

LAUREN MINGEE: Yeah.

RYAN BRADLEY: -- that we can run with. Because if it starts dwindling from there and it's only, you know, 60 percent of them turn into cases, then my margins get real tight. And it's like, well, shit, you know.

LAUREN MINGEE: Yeah.

RYAN BRADLEY: I don't know if it's worth it.

LAUREN MINGEE: Yeah. No. And completely. And I think, you know, what you'll see is that -- And the hope is like, okay, in seven days, all right, it is -- you know, if there is verified insurance, then, you know, they are willing to treat and you were setting them up with treatment, then it's a case and they stick with you. Now, if a case drops out down the road for something else, right, obviously we can't control that.

RYAN BRADLEY: Understood. Understood. And I get that.

LAUREN MINGEE: And so our -- but our goal is -- with these cases is not -- not to just sign you shit cases. Like we don't want you to just sit there and just sign up junk; but like on this one, for instance, just like you said, the one that was signed this morning, like, okay, well, if the girlfriend's at fault or she received a ticket, well, if the ticket was for no insurance, well, that's fine, you know, because you can still go after the defendant, but if she was cited 100 percent at fault, then you can't go after the defendant.

RYAN BRADLEY: Right.

LAUREN MINGEE: Right. And we --

RYAN BRADLEY: Exactly.

LAUREN MINGEE: You know, and we understand that. So if you come back and say, hey, yeah, this is a fantastic (indiscernible) and he, you know, had a broken hand, but it ends up like the girlfriend was 80 percent at fault, like we can't really go after, you know, the defendant or -- on anything, you know, then we -- we get that --

RYAN BRADLEY: Yeah.

LAUREN MINGEE: -- and understand that and move on. But also what we do and what we kind of 1 explain to the clients too whenever they disengage is, you know, we have a saying, we disengage with grace. So if it's disengaged right away, like we signed it and then two seconds later the attorney's like no. Right? But if they take 24 hours or something and then we're even able talk with them, Hey, listen, we uncovered every stone, it ends up being that, you know, your girlfriend was actually cited at fault because she had no insurance, like, I'm so sorry, there's just nothing we can do.

Exhibit 8, p. 12:2-p. 14:10.

See Exhibit 5, Paragraph 64, Affidavit of E. Ryan Bradley, owner of ERB Legal

Investments, LLC; Exhibit 7, audio recording of this telephone call; See Exhibit 8, a certified

transcription of this phone call.

109.    Kyshon Brown was "emailed only" on April, 29, 2020, prior the May 14, 2020

phone call wherein the parties discussed ERB helping qualify cases and getting extensions to do

so.

110.    Jasmine Burns never appeared as a separate lead within the portal with entries for

"PC First Name," "OC Middle Name" and "PC Last Name" and as such ERB never received

portal notification that she was a separate lead / plaintiff. Rather, his name only appeared within

the "notes" section of a lead for "Travorous Johnson." See Exhibit 5, Paragraph 65, affidavit of

E. Ryan Bradley, owner of ERB Legal Investment, LLC.

111.    A true and accurate copy of Quintessa's website, www.quintessamarketing.com,

as it existed on April 4, 2020 as reported by www.web.archive.org is attached as Exhibit 10.

Therein, Quintessa makes the following statements, each of which are taken verbatim from its

website:

    * Quintessa Marketing delivers comprehensive marketing services for client acquisition

to attorneys and law firms. Ex. 10, p. 1.

* From advertising and outreach with Video Production, Website Development, Search Engine Optimization (SEO) and Search Engine Marketing (SEM) to Intake Department development, training, quality assurance and conversion optimization with in-house staff. We help those who seek legal assistance find you, and help you turn them into clients. Ex. 10, p. 1.

* Quintessa specializes in giving personal injury law firms a competitive edge in advertising. While the marketplace is crowded in Google, it can cost hundreds of thousands of dollars in marketing spend without a guaranteed ROI. Some large firms come into a new market willing to spend a million without a guaranteed ROI, which we think is ludicrous. We give you leads and cases that allow you to not only market you brand, but guarantee your ROI in your market. Ex. 10, p. 1.

* Whether your new to PI, or have tried every lead generation firm out there, we know what works and what doesn't. We advertise on almost every media form, and send those leads to you. We also sign up every viable client on your retainer agreement so you can save in your investigator costs as well. Need more info on a client? No problem. We also have our own highly trained intake department that acts as an appendage to your law firm to assist in getting potential clients information. So, if you are a small firm or a large firm, we can help you get new clients and build your case count up immediately. Ex. 10, p. 1-2.

* Lead Generation: More Leads, How You Like Them, When You Need Them. To supplement your internal marketing strategies for client acquisition, let our multi-channel, nationwide marketing campaigns deliver exclusively to you the exact qualified client you are seeking. More Clients on YOUR Schedule. You tell us the Qualifiers, we deliver them right to you. Ex. 10, p. 13.

112.    The prior to signing Quintessa's "BULK MARKETING, FULL SERVICE PLATFORM AND GENERAL TERMS OF SERVICE" contract, I personally performed due diligence on Quintessa, including but not limited to reading their website at www.quintessamarketing.com and read all of the above statements listed in paragraph 113 in deciding to hire Quintessa.

113.    On May 9, 2020 Quintessa indicated ERB would enter the "southern Illinois" market and ERB replied on May 14, 2020 after the recorded phone call and confirmed. *See* Exhibit 11, email between Quintessa employee Lea Ann Pickett and E. Ryan Bradley dated May 11, 2020.

114.    Exhibit 9 is a compilation of screenshots from the portal that pertain to the 21 at-issue leads Quintessa claims compensation for that were taken by ERB prior to being locked out of the portal.

115.    Toni Lambert's incident occurred in Decatur, IL according to the intake performed by ERB in Law Ruler. *See* Exhibit 5, Paragraph 68, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

116.    Antwan Miller's incident occurred in Joliet, IL according to the intake performed by ERB in Law Ruler. *See* Exhibit 5, Paragraph 69, affidavit of E. Ryan Bradley, owner of ERB Legal Investment, LLC.

Respectfully submitted,

/s/ E. Ryan Bradley

By: _____

E. Ryan Bradley, #53777
The Bradley Law Firm
Attorney for Plaintiff
1424 Washington Avenue, Ste 300
St. Louis, MO 63103
(314) 721-9111 (phone)
(314) 255-2765 (fax)
Ryan@thebradleylawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 31, 2022, I electronically filed the foregoing Certificate of Service with the Clerk of the Court using the **Missouri Courts E-Filing System** which was sent notification of such filing to all counsel of record.  I further certify that I signed, or caused my electronic signature to be place upon the original of the foregoing documents and that a copy of the foregoing was sent via the Court's efiling system to.

James Wyrsch
Khazaeli Wyrsch
Attorney For: Quintessa Marketing, LLC
911 Washington Ave
Suite 211
St. Louis, MO  63101
Phone: (314) 288-0777
Fax: (314) 400-7701
Email Address: james.wyrsch@kwlawstl.com