UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERB LEGAL INVESTMENTS LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| v. | ) | Cause No. 4:20-cv-1255-DDN |
| | ) | |
| QUINTESSA MARKETING, LLC, et al. | ) | |
| | ) | |
| Defendants/Counterclaim Plaintiff. | ) | |

**QUINTESSA, LLC'S FOURTH SUPPLEMENTAL ANSWERS AND OBJECTIONS TO
ERB LEGAL INVESTMENTS, LLC'S FIRST SET OF INTERROGATORIES**

For its Supplemental Answers and Objections to ERB Legal Investments, LLC's ("ERB")

First Set of Interrogatories, Quintessa, LLC, d/b/a Quintessa Marketing, LLC ("Quintessa") states

as follows:

GENERAL OBJECTIONS

I.      **Quintessa objects to ERB's propounding of 147 interrogatories, to include
subparts, in direct violation of this Court's Joint Proposed Scheduling Order
[ECF No. 28]. ERB has served no fewer than 147 interrogatories over 17 pages
for a matter in which it has pleaded damages not to exceed $50,000 [Am. Pet,
ECF No. 5]. Although the Eighth Circuit has not adopted any specific test for
counting interrogatories, at least one court in this District has addressed the
matter in an unpublished order, noting that "interrogatory subparts are to be
counted as one interrogatory . . . if they are logically or factually subsumed
within and necessarily related to the primary question." *Buetow v. A.L.S.
Enters., Inc., et al.*, Civ. No. 07-3970 (RHK/JJK), Doc. No. 285 at 4–5 (D. Minn.
Sep. 21, 2009) (unpublished) (Keyes, M.J.) (quotations omitted). As a
sampling of ERB's discovery requests: Interrogatory 11 has sixteen subparts;
interrogatory 16 has nineteen subparts with four additional sub-subparts; and
interrogatory 18 has sixteen subparts. Many, if not most, of these subparts are
discrete Interrogatories because the factual basis for each response is not
logically or factually subsumed within or necessarily related to the primary
questions.**

II.     **Quintessa objects to ERB's instructions to these interrogatories to the extent
that such instructions enlarge or expand the burden upon Quintessa beyond
the requirements of the Federal Rules of Civil Procedure or this Court's case
management order.**

1

III.     Quintessa specifically objects to any request which may be construed to seek privileged attorney-client communications or work product.

IV.     Quintessa objects to the use of any proper nouns or terms undefined by ERB to the extent that such terms imply a term of art or any definition beyond the common and regularly understood meaning of such term.  Quintessa also objects to ERB's purported definitions to the extent they alter the regularly understood meaning of the term.

V.      Quintessa's investigation of this matter is not complete and Quintessa reserves the right to supplement under the Federal Rules of Civil Procedure.

VI.     No admissions are intended by any response herein unless so specified.

VII.    These objections are incorporated into each response below as if fully set forth therein.

ANSWERS AND OBJECTIONS

1.     Please identify the following:
   (a)     Name of the person(s) answering these Interrogatories;
   (b)     Address for each individual identified in (a);
   (c)     Marital status for each individual identified in (a);
   (d)     Social Security number for each individual identified in (a);
   (e)     Date of birth for each individual identified in (a);
   (f)     For each individual identified in (a) his or her relationship to Quintessa; and
   (h)     For each individual identified in (a), the name, address and telephone number of your current employer as well as each of your prior employers for last 30 years. For each employer, state the date of employment and termination, your position, title and nature of your occupational responsibilities with respect to said employment;
   (i)     Quintessa's full legal name;
   (j)     Quintessa's state of domicile;
   (k)     Quintessa's date of incorporation;
   (l)     The name, address, and phone number of each owner / member of Quintessa as well as the percentage ownership of each individual; and
   (m)     For each owner / member identified in (l), identify any other entity(ies) each individual has ever been a member, shareholder or owner of including but not limited to the legal name of said entity, state of domicile, date of incorporation, and date of dissolution (if applicable).

**ANSWER:**
   a. **Quintessa's Chief Executive Officer, Lauren Mingee, as well as Mike Walker, with the assistance of undersigned counsel.**
   b. **Lauren Mingee's and Mike Walker's business mailing address is 1900 Northwest Expy Suite 1600, Oklahoma City, OK 73118.**
   c. **Quintessa objects to Interrogatory #1(c) as it is irrelevant and not proportional to**

2

the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues.  Furthermore, the burden in fully responding to Interrogatory #1(c) outweighs its likely benefit.

d. **Quintessa objects to Interrogatory #1(d) as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues.  Furthermore, the burden in fully responding to Interrogatory #1(d) outweighs its likely benefit.**

e. **Quintessa objects to Interrogatory #1(e) as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues.  Furthermore, the burden in fully responding to Interrogatory #1(e) outweighs its likely benefit.**

f. **Lauren Mingee is Quintessa's owner.**

h. **Quintessa objects to Interrogatory #1(h) as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues.  Furthermore, the burden in fully responding to Interrogatory #1(h) outweighs its likely benefit.**

i. **Quintessa LLC.**

j. **Oklahoma.**

k. **Oklahoma.**

l. **Lauren Mingee is the sole member/owner.**

m. **Pursuant to the Court's ruling, Quintessa states that the following entities have provided marketing services to lawyers on or after April 20, 2020: Quintessa LLC, Quintessa Concepts LLC, and Quintessa Intake LLC. Each entity is owned by Lauren Mingee. Quintessa LLC is the only entity that provides leads to lawyers. Each is an Oklahoma limited liability company, and all are still active.**

2. **WITNESSES**:

Identify each person who witnessed or claims to have information pertaining to any of the alleged occurrences, events or incidents described in any Complaint(s), Petition(s), Counter-Claim(s) or affirmative defense(s), or any amendments thereto, asserted by any party in this cause of action.

**ANSWER: See Quintessa's Rule 26(a)(1) disclosures and documents produced pursuant to same.**

3. **STATEMENTS:**

Has Quintessa (or anyone acting on its behalf) had any conversations with any person at any time with regard to the occurrences mentioned in the Complaints, Petitions, Counter-Claims or affirmative defenses, or any amendments thereto, in this lawsuit? If the answer to this interrogatory is in the affirmative, state the following:

(a)   The date or dates of such conversations and/or statements;

(b)   The place of such conversations and/or statements;

(c)   All persons present for the conversations and/or statements;

(d)   The matters and things stated by the person in the conversations and/or statements;

3

(e)     Whether the conversation was oral, written and/or recorded; and

(f)     Who has possession of the statement if written and/or recorded.

ANSWER: Quintessa objects to Interrogatory #3 as it is not properly limited in time, subject matter, or scope, and thus not proportional to the needs of the case as the substantial burden to identify additional responsive materials is outweighed by the likely benefit. Furthermore, the breadth of Interrogatory #3 may encompass documents subject to attorney-client privilege and/or work product privilege. Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," "2(a) - Recorded telephone conversation between Alyssa Viera and Marshanice Robinson," and "2(b) - Recorded telephone conversation between Alyssa Viera and Marshanice Robinson," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)."

**SUPPLEMENTAL ANSWER: Quintessa objects to Interrogatory No. 3 as the breadth of this Request may encompass documents subject to attorney-client privilege and/or work product privilege. Based on ERB's qualification that ERB is seeking statements by Quintessa employees and agents, including Kevin Quinlan, subject to and without waiving the objection, ERB states please see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," "2(a) - Recorded telephone conversation between Alyssa Viera and Marshanice Robinson," and "2(b) - Recorded telephone conversation between Alyssa Viera and Marshanice Robinson," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)."**

4.     **CONVICTIONS / CRIMES**:

Has any agent, employee, director or owner of Quintessa ever plead guilty to or ever been convicted of a misdemeanor or a felony (State or Federal)? If so, state:

a)   the name of the crime you were convicted of;
b)   the statute you were convicted of;
c)   date of the incident giving rise to the conviction;
d)   date of the conviction,
e)   style of the case;
f)   the court where you were convicted; and
g)   and the caption in which the conviction occurred.

**ANSWER: Quintessa objects to Interrogatory #4 as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues in this case. Subject to and without waiving said objections, with respect to only Quintessa owner, Lauren Mingee, none.**

**SUPPLEMENTAL ANSWER: Pursuant to the Court's ruling, with respect to only Quintessa owner, Lauren Mingee, none. Quintessa further states that it will provide a list of**

4

**any misdemeanor or felony conviction for any Quintessa employee who spoke with leads that Quintessa sent to ERB and is willing to provide such information to Quintessa.**

5. **EXPERTS**

List and identify:

(a) Each person you expect to call as an expert witness at trial, stating for each such expert:
(i) Name;
(ii) Address;
(iii) Occupation;
(iv) Place of Employment;
(v) Qualifications to give an opinion (if such information is available on an expert's curriculum vitae you may attach a copy thereof in lieu of answering this interrogatory subpart;

(b) With respect to each expert listed, please state the subject matter on which the expert is expected to testify and the expert's hourly deposition fee.

(c) Identify each non-retained expert witness, including a party, who the plaintiff expects to call at trial who may provide expert witness opinion testimony by providing the expert's name, address and field of expertise.

**ANSWER: Quintessa has not determined which expert witnesses, if any, it will rely upon at trial. Quintessa reserves its right to supplement its response to Interrogatory #5 in accordance with the Federal Rules of Civil Procedure or any order of the Court.**

6. **CONTRACTS**

Identify all documents that evidence agreements and/or contracts, including any modifications thereof, between ERB and Quintessa.

**ANSWER: See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)" and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)."**

7. If you contend any agreement(s) or contract(s) identified in your answer to #6 above is not valid or enforceable, describe in detail the factual and legal basis for this contention.
**ANSWER: N/A.**

8. Describe in detail why ERB has not performed as required by the Contract and alleged in your Petition at paragraphs 11 and 13, to wit:

11. Further, Defendant failed to properly or timely disengage at least 32 leads that it has not paid for (and thus owes Plaintiff for).

13. Defendant's failure to pay Plaintiff for leads it has not properly disengaged constitutes a breach of the parties' Contract.

5

ANSWER: Quintessa does not know the reason(s) why ERB has not performed its obligations under the Contract.

**SUPPLEMENTAL ANSWER: With the clarification that ERB is asking seeking "information as to what exactly Quintessa alleges ERB not do [sic] that it was legally required to do," Quintessa states that ERB did not timely disengage through the web portal for 21 leads. These 21 leads are detailed in Quintessa.0190 ("Email Leads not disengaged"), which was previously produced. As demonstrated in Quintessa.0190, ERB owes a balance of $50,800.00 to Quintessa for these 21 leads.**

9.   If Quintessa contends that its alleged breaches of the Contract as set forth in ERB's Amended Petition [Doc. 5 Cause No. 4:20-CV-1255] are excused for any reason, describe in detail the factual and legal basis for this contention.

ANSWER: **Quintessa objects to Interrogatory #9 as it is vague and ambiguous as it assumes facts not evidence, specifically that Quintessa breached the Contract.**

10.   Did Quintessa receive all the money due to it from ERB for the services provided by Quintessa as identified in the Contract?  If your answer is other than an unqualified "yes," state the basis for:
   a.   your answer;
   b.   how you arrived at this conclusion;
   c.   all facts that support and/or form the basis for your conclusion;
   d.   the total amount that you believe ERB should have paid and how you arrive at that conclusion, showing in detail your arithmetic along with Lead name and supporting information; and
   e.   the total amount that ERB did in fact pay.

ANSWER: **No.**
   a.   **ERB did not pay for multiple leads that it failed to timely or properly disengage.**
   b.   **Quintessa provided the leads, and ERB did not disengage or pay for them.**
   c.   **Same answer as in subpart b, above.**
   d.   **$325,800.00 at a minimum, which includes $275,000.00 for leads that ERB paid for, plus an additional $50,800.00 for 21 emailed leads that were never disengaged or paid for. See documents produced concurrently herewith, specifically that titled "11 - Email Leads not disengaged (QUINTESSA 0190)." This amount does not include amounts owed for any leads that ERB disengaged but either continued to represent or referred to other counsel. Quintessa reserves the right to supplement its Answer to this Interrogatory as discovery progresses.**
   e.   **$275,000.00**

11.   **QUINTESSA'S PERFORMANCE**

Identify the following:

a. the name and address of each Lead delivered pursuant to the terms of the contract with ERB;

b. the date and time said Lead contacted Quintessa or if Quintessa made first contact the date and time thereof;

c. identify whether said communication was telephonic and whether that call was audio recorded along with the custodian thereof;

d. the identity of the individual(s) who pre-qualified each Lead pursuant to the terms of the contract;

e. describe in detail the pre-qualification criteria (criterion) Quintessa utilized at any time for pre-qualification of Leads pursuant to the terms of the contract;

f. for each Lead, identify how Quintessa determined the Lead was pre-qualified per the terms of the Contract, describing in detail each qualifying fact;

g. for each fact identified in (f) above, describe in detail any efforts by Quintessa to verify each qualifying fact;

h. any ERB retainer contract Quintessa send to any Lead;

i. the date, time and method by which said Lead was transmitted by Quintessa to ERB;

j. for each Lead, whether ERB ever disengaged the Lead or attempted to disengage the Lead with Quintessa;

k. the date of each ERB disengagement or attempted disengagement identified in (j);

l. the basis for each ERB disengagement or attempted disengagement identified in (j);

m. investigation done by Quintessa as to the merits of the disengagement or attempted disengagement identified in (j),

n. whether each disengagement or attempted disengagement identified in (j) was valid along with an explanation of why it was invalid if that was Quintessa's conclusion;

o. identify any response by Quintessa to any ERB regarding its determination set forth in (n); and

p. the identities of each individual who participated in the investigations identified in (m), the determination identified in (n) and the communication with ERB identified in (o).

ANSWER: Quintessa reiterates its objection to this Interrogatory as each and every self-styled "subpart" is a wholly separate, discrete inquiry because the factual basis for each response is not logically or factually subsumed within or necessarily related to the primary question. *See Hansen v. Savage Arms Co.*, No. 17-CV-3002-LTS, 2017 WL 6376342, at *6–8 (N.D. Iowa Dec. 13, 2017). Subject to and without waiving said objections, Quintessa states as follows:

a. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." For further answer, this information can be derived from documentation already in ERB's possession, including but not limited to the intake information (email) sent by Quintessa to ERB for every lead.

b. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." For further answer, this information can be derived from documentation already in ERB's possession, including but not limited to the

7

intake information (email) sent by Quintessa to ERB for every lead.

c. For any telephonic communication made with a potential lead, Quintessa's telephone service company, Talkdesk, records the call.  Talkdesk is the custodian of these recordings.

d. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)."  For further answer, this information can be derived from documentation already in ERB's possession, including but not limited to the intake information (email) sent by Quintessa to ERB for every lead.

e. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign," "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)." For further answer, when attempting to pre-qualify a lead, Quintessa communicates with the potential client, asking detailed questions about a person's accident, any insurance information that is known, determinations of fault, status of injuries and medical treatment, and whether the case might implicate a commercial enterprise or insurance policy. Quintessa reserves the right to supplement its Answer to this Interrogatory as discovery progresses.

f. Quintessa objects to Interrogatory #11(f) as it is vague and ambiguous.  Quintessa further objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign," "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)." For further answer, for each lead that is in dispute in this case, Quintessa determined that the lead met its qualification criteria by analyzing the information provided by the potential client.

g. Quintessa objects to Interrogatory #11(g) as it is vague and ambiguous.  Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," and "4 - Correspondence between Plaintiff and Defendant,

including emails and text messages (QUINTESSA 0009-0189)." For further answer, Quintessa takes each potential client at his or her word when they provide facts or information about their case. The attorneys (including ERB) then verify these facts, and if they prove to be incorrect, the attorney can disengage the lead within the time frame allotted and for the reasons outlined in the parties' contract.

h.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information.  Subject to and without waiving these objections, this information can be derived from documents already in ERB's possession. ERB was sent a copy of every single retainer contract that Quintessa sent to a lead.

i.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case.  The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, this information can be derived from documents already in ERB's possession.  ERB was sent an email containing the intake information for every single lead sent, as well as a copy of every single retainer contract that Quintessa sent to a lead.

j.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case.  The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information.  Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)."  Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."

k.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."

l.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case.  The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign

(QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."

m.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case.  The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information.  Subject to and without waiving these objections, for each disengagement for any lead that is in dispute in this case, Quintessa reviewed the reason provided by ERB and analyzed whether the disengagement met the criteria specified in the parties' contract.

n.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."

o.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."

p.  Mike Walker and Lauren Mingee.

**ANSWER: Quintessa reiterates its objection to this Interrogatory as each and every self-styled "subpart" is a wholly separate, discrete inquiry because the factual basis for each response is not logically or factually subsumed within or necessarily related to the primary question.** *See Hansen v. Savage Arms Co.*, **No. 17-CV-3002-LTS, 2017 WL 6376342, at \*6–8 (N.D. Iowa Dec. 13, 2017).  Subject to and without waiving said objections, Quintessa states as follows:**

   a.  **See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign," "6 - Information from Defendant's client portal for Plaintiff's**

10

Campaign (QUINTESSA 0005-0007)," and the spreadsheet titled "8 - Bradley Lawfirm leads." Specifically, for addresses, see columns N through Q of "8 - Bradley Lawfirm leads."

b. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)."   For further answer, this information can be derived from documentation already in ERB's possession, including but not limited to the intake information (email) sent by Quintessa to ERB for every lead.

c. For any telephonic communication made with a potential lead, Quintessa's telephone service company, Talkdesk, records the call.   Talkdesk is the custodian of these recordings. To Quintessa's knowledge, Talkdesk did record these calls. Talkdesk is a company headquartered in San Francisco, California. Its address is 388 Market Street, Suite 1300, San Francisco, CA 94111. Its telephone number is (844) 332-2859.

d. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)."   For further answer, this information can be derived from documentation already in ERB's possession, including but not limited to the intake information (email) sent by Quintessa to ERB for every lead. Quintessa will produce a list of names with last known contact information for former employees. All current employees can be contacted through counsel.

e. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign," "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)," the spreadsheet titled "8 - Bradley Lawfirm leads," and the spreadsheet titled "9 - Bradley Lawfirm lead notes." For further answer, Quintessa attempts to father the information related to the criteria in "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)." Quintessa communicates with the potential client, asking detailed questions about a person's accident, including but not limited to, any insurance information that is known, determinations of fault, estimate of property damage, status of injuries and medical treatment, and whether the case might implicate a commercial enterprise or insurance policy. All of the information collected by Quintessa from the leads is contained in the spreadsheet titled "8 - Bradley Lawfirm leads," and the spreadsheet titled "9 - Bradley Lawfirm lead notes." Quintessa reserves the right to supplement its Answer to this Interrogatory as discovery progresses.

f. Quintessa objects to Interrogatory #11(f) as it is vague and ambiguous. Quintessa further objects on the ground that such information is relevant only

11

for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign," "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)," the spreadsheet titled "8 - Bradley Lawfirm leads," and the spreadsheet titled "9 - Bradley Lawfirm lead notes." All of the information collected by Quintessa from the leads is contained in the spreadsheet titled "8 - Bradley Lawfirm leads," and the spreadsheet titled "9 - Bradley Lawfirm lead notes." For further answer, for each lead that is in dispute in this case, Quintessa determined that the lead met its qualification criteria by analyzing the information provided by the potential client. Quintessa takes each potential client at his or her word when they provide facts or information about their case. The attorneys (including ERB) then verify these facts, and if they prove to be incorrect, the attorney can disengage the lead within the time frame allotted and for the reasons outlined in the parties' contract.

g.  Quintessa objects to Interrogatory #11(g) as it is vague and ambiguous. Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)," the spreadsheet titled "8 - Bradley Lawfirm leads," and the spreadsheet titled "9 - Bradley Lawfirm lead notes." All of the information collected by Quintessa from the leads is contained in the spreadsheet titled "8 - Bradley Lawfirm leads," and the spreadsheet titled "9 - Bradley Lawfirm lead notes." For further answer, Quintessa takes each potential client at his or her word when they provide facts or information about their case. The attorneys (including ERB) then verify these facts, and if they prove to be incorrect, the attorney can disengage the lead within the time frame allotted and for the reasons outlined in the parties' contract.

h.  Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, this information can be derived from documents already in ERB's possession. ERB was sent a copy of every single retainer contract that Quintessa

12

**sent to a lead.**

i. **Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, this information can be derived from documents already in ERB's possession. ERB was sent an email containing the intake information for every single lead sent, as well as a copy of every single retainer contract that Quintessa sent to a lead.**

j. **Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred." Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal, including but not limited to, requests by ERB to disengage a lead and Quintessa's responses.**

k. **Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred." Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal, including but not limited to, requests by ERB to disengage a lead and Quintessa's responses. The date of each request to disengage is reflected in in the portal and/or Exhibits 8-9.**

l. **Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident**

Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred." Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal, including but not limited to, requests by ERB to disengage a lead and Quintessa's responses. ERB is in a better position to state the reason it requested disengagement. However, assuming ERB properly coded the disengagement, the reason for the disengagement request should be identified in the portal and/or Exhibits 8-9.

m.   Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case.  The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information.  Subject to and without waiving these objections, for each disengagement for any lead that is in dispute in this case, Quintessa reviewed the reason provided by ERB and analyzed whether the disengagement met the criteria specified in the parties' contract. Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal, including but not limited to, requests by ERB to disengage a lead and Quintessa's responses. The responses in the notes, located in the portal and/or Exhibits 8-9, will reflect any investigation by Quintessa regarding disengagement requests. As part of its investigation, Quintessa would also request and review information and documents provided by ERB, if any, in support of each disengagement request.

n.   Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred." Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal, including but not limited to, requests by ERB to disengage a lead and Quintessa's responses. The responses in the notes, located in the portal and/or Exhibits 8-9, will reflect Quintessa's determination of the validity of each disengagement request.

o.   Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties' contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, Quintessa objects on the ground that such information is relevant only for the leads that are in dispute in this case. The burden of providing the requested information for every single lead sent pursuant to the parties'

14

**contract heavily outweighs any benefit of such information. Subject to and without waiving these objections, see documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" and "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)." Additionally, see the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred." Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal, including but not limited to, requests by ERB to disengage a lead and Quintessa's responses. The responses in the notes, located in the portal and/or Exhibits 8-9, will reflect Quintessa's determination of the validity of each disengagement request.**

   p.   **Mike Walker and Lauren Mingee.**

12.    ERB understands that Quintessa audio records all calls to and from its offices. Identify the following:

   a.    Quintessa's policy(ies) in recording phone calls;
   b.    Where said phone call recordings are stored;
   c.    Identify the record custodian(s) for these phone calls;
   d.    For each Lead that Quintessa claims ERB improperly disengaged, please identify all call recordings to or from that Lead maintained by Quintessa or its IT contractor(s); and
   e.    Identify any phone call recordings with ERB or its employees / agents.

**ANSWER: Quintessa objects to Interrogatory #12 as it is not properly limited in time or scope, and is thus not proportional to the needs of the case considering the marginal importance of the additional information to the claims and defenses in this litigation and that the substantial burden to identify additional responsive information is not outweighed by the likely benefit. Subject to and without waiving said objections, a third-party company, Talkdesk, records calls on Quintessa's intake phone lines. Talkdesk is the custodian of these calls. Talkdesk is a company headquartered in San Francisco, California. Its address is 388 Market Street, Suite 1300, San Francisco, CA 94111. Its telephone number is (844) 332-2859. Quintessa's policy is to attempt to record every call with a lead. Additionally, see documents produced by Quintessa pursuant to its Rule 26(a) disclosures, specifically those titled "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," "2(a) - Recorded telephone conversation between Alyssa Viera and Marshanice Robinson," and "2(b) - Recorded telephone conversation between Alyssa Viera and Marshanice Robinson." Quintessa reserves the right to supplement its Answer to this Interrogatory as discovery progresses.**

13.    If Quintessa contends it fulfilled its obligations under the Contact, describe in detail the performance or tendered performance.

**ANSWER: Quintessa objects to Interrogatory #13 as it is vague and ambiguous. Subject to and without waiving said objections, see documents produced by Quintessa pursuant to its**

**Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)." For further answer, Quintessa delivered leads to ERB as required by the contract.**

14.    Did Quintessa ever notify ERB of any reason why ERB was in breach of contract or did not perform its duties under the Contract? If yes, please identify:
   a.    The date(s) of each communication;
   b.    The nature of said communication (oral, written, email, letter, etc.);
   c.    The contents of each communication; and
   d.    Identify each individual who on behalf of Quintessa determined the language to be included on any such communication.

**ANSWER: Yes. See documents produced by Quintessa pursuant to its Rule 26(a)(1) disclosures, specifically those titled "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients" and the page Bates-labelled QUINTESSA 0023 in "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)." Specifically, see the email from Lauren Mingee to Ryan Bradley dated July 17, 2020.**

15.    Identify every individual or business entity that Quintessa contracted to provide the same or similar services as you provided to ERB from 1-1-2001 to present. For each, please state:
   a.    the name of the entity or individual;
   b.    the name of your primary contact;
   c.    the date you first provided services;
   d.    if applicable, the date you last provided services;
   e.    for each, whether it was ever alleged that you failed to provide the contracted services in any capacity along with a detailed description of the allegation;
   f.    for each allegation identified in (e), whether any legal action(s) was (were) commenced as a result;
   g.    for each, identify any communication that dealt with Quintessa's qualifying of Leads, or failing to qualify Leads;
   h.    for each, identify any communication that dealt with Quintessa's handling of disengagements;
   i.    for each, identify any wherein Quintessa alleged the entity or individual improperly or fraudulently disengaged Leads; and
   j.    describe in detail the basis for Quintessa's allegation identified in (i).

**ANSWER: Quintessa objects to Interrogatory #15 as it is irrelevant and not proportional to the needs of the case considering the importance of the issues at stake in the action, the**

16

amount in controversy, and the importance of the discovery in resolving the issues. Furthermore, the burden in fully responding to Interrogatory #15 outweighs any likely benefit this information may have to resolving the issues in dispute.

**SUPPLEMENTAL ANSWER**:

Quintessa objects to Interrogatory #15 as it is irrelevant and not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, and the importance of the discovery in resolving the issues. Furthermore, the burden in fully responding to Interrogatory #15 outweighs any likely benefit this information may have to resolving the issues in dispute.

Subject to the objection, and pursuant to the Court's order, Quintessa responds as follows:

a.   Please see the attached Exhibit A.

b.   Please see the attached Exhibit A.

c.   Please see the attached Exhibit A.

d.   Please see the attached Exhibit A.

e.   Quintessa objects to this subpart on the grounds that the phrase "failed to provide the contracted services in any capacity" is vague, ambiguous, overly broad, and unduly burdensome. Taken literally, this could potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa states that Hupy and Abraham alleged, among other things, that Quintessa breached their contract. Their allegations are contained in a complaint filed in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. Quintessa denies Hupy and Abraham's allegations.

f.   Hupy and Abraham filed suit in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. This suit was later dismissed by the Court and is currently in arbitration.

g.   Quintessa objects to this subpart on the grounds that it is vague and ambiguous and, taken literally, would potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa states please see the allegations contained in a complaint filed in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. Quintessa is currently gathering and will produce all other responsive documents as soon as possible.

17

h.   Quintessa objects to this subpart on the grounds that it is vague and ambiguous and, taken literally, would potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa states please see the allegations contained in a complaint filed in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. Quintessa is currently gathering and will produce all other responsive documents as soon as possible.

i.   Quintessa objects to this subpart on the grounds that it is vague and ambiguous and, taken literally, would potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa alleged that Customer 14 on Exhibit A referred out disengaged leads.

j.   Customer 14 on Exhibit A disengaged some leads and still referred them to other law firms.

**SECOND SUPPLEMENTAL ANSWER**:

Pursuant to the Court's order, Quintessa responds as follows:

a.   Please see Exhibit A that was produced to Plaintiff on February 23, 2022 via email and by hand delivery on March 1, 2022 ("Exhibit A").

b.   Please see Exhibit A.

c.   Please see Exhibit A.

d.   Please see A.

e.   Quintessa objects to this subpart on the grounds that the phrase "failed to provide the contracted services in any capacity" is vague, ambiguous, overly broad, and unduly burdensome. Taken literally, this could potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa states that Hupy and Abraham alleged, among other things, that Quintessa breached their contract. Their allegations are contained in a complaint filed in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. Quintessa denies Hupy and Abraham's allegations.

f.   Hupy and Abraham filed suit in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. This suit was later dismissed by the Court and is currently in arbitration.

18

g.   **Quintessa objects to this subpart on the grounds that it is vague and ambiguous and, taken literally, would potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa states please see the allegations contained in a complaint filed in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. Quintessa further states please see the documents produced in Response to Request for Production Nos. 9, 24, and 25.**

h.   **Quintessa objects to this subpart on the grounds that it is vague and ambiguous and, taken literally, would potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa states please see the allegations contained in a complaint filed in the Eastern District of Wisconsin, No. 2:21-cv-00577-JPS. Quintessa further states please see the documents produced in Response to Request for Production Nos. 9, 24, and 25.**

i.   **Quintessa objects to this subpart on the grounds that it is vague and ambiguous and, taken literally, would potentially encompass myriad trivial or minor disputes, which it would be impossible to recall or delineate. Subject to that objection and with the understanding that the Interrogatory intends to seek information regarding substantive disputes, Quintessa alleged that Customer 14 on Exhibit A referred out disengaged leads.**

j.   **Customer 14 on Exhibit A disengaged some leads and still referred them to other law firms.**

16.   Describe the access ERB was granted to the "online web portal" identified in your Petition in paragraph 8 at all times during the pendency of Quintessa's business relationship with ERB, including but not limited to:

a.   the login credentials for each user;

b.   the fields that ERB _could not_ modify;

c.   the fields that ERB _could_ modify;

d.   the meaning of type that appears black in color;

e.   identify exactly when and how Quintessa communicated to ERB the meaning of type that appears black in color;

f.   identify any communication from ERB wherein it questioned what the meaning of type that appears black in color;

g.   identify any response from Quintessa to ERB's inquiry identified in (f);

h.   the meaning or type that appears red in color;

i.   identify exactly when and how Quintessa communicated to ERB the meaning of type that appears red in color;

19

j.     identify any communication from ERB wherein it questioned what the meaning of type that appears black in color;

k.    identify any response from Quintessa to ERB's inquiry identified in (j);

l.    the meaning of any type that contains yellow highlighting;

m.   identify exactly when and how Quintessa communicated to ERB the meaning of type that contains yellow highlighting;

n.    identify any communication from ERB wherein it questioned what the meaning of yellow highlighting;

o.    identify any response from Quintessa to ERB's inquiry identified in (n);

p.    the identities of each individual(s) who on behalf of Quintessa received ERB's communication through the online web portal;

q.    for each such communication from ERB regarding a client disengagement, please state:

       i.    The identity of the Lead ERB disengaged or attempted to disengage;

      ii.   The date the Lead was originally sent by Quintessa to ERB;

      ii.   The date of the disengagement or attempted disengagement by ERB; and

     iii.  For each disengagement or attempted disengagement, identify any response from Quintessa to ERB regarding that request.

r.    Identify the date and time there was any modification to the "online web portal" by anyone; and

s.    Identify the contents of any addition to or deletion of any information to the "online web portal" referenced in (r).

**ANSWER: Quintessa objects to Interrogatory #16 as it is not properly limited in time or subject matter and unlimited in scope, and thus not proportional to the needs of the case considering the marginal importance of the additional information to the claims and defenses in this litigation, that the substantial burden to identify additional responsive information is not outweighed by the likely benefit.  Subject to and without waiving said objections, see documents produced pursuant to Quintessa's Rule 26(a)(1) disclosures, specifically those titled "5 - Google Document prepared for Plaintiff's Campaign" "6 - Information from Defendant's client portal for Plaintiff's Campaign (QUINTESSA 0005-0007)," "3 - Agreement between Plaintiff and Defendant (QUINTESSA 0001-0004)," "1 - Recorded telephone conversation between Ryan Bradley, Leo Mingee, and Lauren Mingee regarding disengagement of clients," and "4 - Correspondence between Plaintiff and Defendant, including emails and text messages (QUINTESSA 0009-0189)."  For further answer, Quintessa states:**

    **a.  ERB's login credentials are: Username=rbradley.  ERB's password is unknown to Quintessa, and ERB had the ability to change its own password.**

    **b.  All fields not described in c, below.**

    **c.  ERB could click buttons for "Disengage," "Attorney Retained," and "Attorney Signed." ERB could also modify the "Notes" field and add notes for a lead.**

    **d.  All of the type appears black in color.**

    **e.  All of the type appears black in color.**

    **f.  All of the type appears black in color.**

    **g.  All of the type appears black in color.**

    **h.  There is no red type that appears in the online web portal.**

    i.    **There is no red type that appears in the online web portal.**
    j.    **There is no red type that appears in the online web portal.**
    k.    **There is no red type that appears in the online web portal.**
    l.    **There are no yellow highlighted fields within the online web portal.**
    m.    **There are no yellow highlighted fields within the online web portal.**
    n.    **There are no yellow highlighted fields within the online web portal.**
    o.    **There are no yellow highlighted fields within the online web portal.**
    p.    **Lauren Mingee, Leo Mingee, and Mike Walker. Quintessa reserves the right to supplement its Answer to this Interrogatory as discovery progresses.**
    q.    **See Quintessa's Answer to Interrogatory No. 11.**
    r.    **See the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."**
    s.    **See the Accident Intake (the "online web portal") notes for each lead that is in dispute in the documents produced concurrently herewith as "8 - Bradley Lawfirm leads," "9 - Bradley Lawfirm lead notes," and "10 - Not repped_referred."**

**SUPPLEMENTAL ANSWER: Quintessa incorporates its original response to Interrogatory No. 16 as set forth above. Quintessa further states that it will give ERB access to the online portal so that it can review all of the information in the portal.**

17.    In paragraph 10 of your Petition, you reference an "internal audit." Identify the following:
    a.    The identity(ies) of the individual(s) involved in the internal audit;
    b.    The date and time the internal audit began;
    c.    The date and time the internal audit ended;
    d.    The conclusions of the internal audit and a detailed explanation of how the conclusion was derived;
    e.    Did Quintessa ever engage in any other "internal audits" of ERB's account?;
    f.    If your answer to (e) is in the affirmative, for each such audit, please state the answers to (a)-(d) above for each such audit; and
    g.    Identify Quintessa's own policy(ies) concerning when internal audits of accounts occur.

ANSWER:    Quintessa reiterates its objection to this Interrogatory as each and every self-styled "subpart" is a wholly separate, discrete inquiry because the factual basis for each response is not logically or factually subsumed within or necessarily related to the primary question. *See Hansen v. Savage Arms Co.*, No. 17-CV-3002-LTS, 2017 WL 6376342, at *6–8 (N.D. Iowa Dec. 13, 2017).  Subject to and without waiving said objections, Quintessa states as follows:
    a.    Lauren Mingee and Mike Walker.
    b.    Quintessa does not know the exact date or time it's audit began.
    c.    Quintessa does not know the exact date or time it's audit ended.
    d.    Lauren concluded that Quintessa had sent ERB dozens of leads that were not properly or timely disengaged and were never paid for by ERB. Lauren reached this conclusion by looking at the online web portal information, which shows that

many leads were not properly or timely disengaged.

e. None other than assessing disengagements and confirming payments made by ERB.

f. N/A.

g. Quintessa conducts an audit or review any time it feels it may be necessary to confirm details regarding a law firm's campaign, including but not limited to proper payments for leads, campaign details, and disengagements.

**SUPPLEMENTAL ANSWER:**     **Quintessa states as follows:**

**a. Lauren Mingee and Mike Walker.**

**b. Quintessa does not know the exact date or time the audit began but can confirm it occurred in June 2020.**

**c. Quintessa does not know the exact date or time the audit ended but can confirm it occurred in June 2020.**

**d. Lauren concluded that Quintessa had sent ERB dozens of leads that were not properly or timely disengaged and were never paid for by ERB. Lauren reached this conclusion by looking at the online web portal information, which shows that many leads were not properly or timely disengaged.**

**e. None other than assessing disengagements and confirming payments made by ERB.**

**f. N/A.**

**g. Quintessa conducts an audit or review any time it feels it may be necessary to confirm details regarding a law firm's campaign, including but not limited to proper payments for leads, campaign details, and disengagements.**

18. Identify the facts, documents, or evidentiary support for your factual contentions in:

a. paragraph 11 that "Defendant failed to properly or timely disengage at least 32 Leads that it has not paid for (and thus owes Plaintiff for);"

b. paragraph 12 that "Plaintiff has demanded payment from Defendant for the Leads that it failed to properly or timely disengage, by Defendant has refused to make such payment";

c. paragraph 13 that ERB breached the contract;

d. in paragraph 14 that Quintessa "incurred damages in an amount in excess of $50,000" and specifically describe how that (those) damage calculation(s) were derived;

e. paragraph 16 of your Petition that "In disengaging or turning down various Leads through Plaintiff's online web portal Defendant (through its agents Edward Ryan Bradley and Rachel Schmitt) falsely represented to Plaintiff that these Leads were being disengaged/rejected because there was too little property damage ("under $1,500.00") or because the potential client was "'unresponsive ...."

f. paragraph 17 of your Petition, that "Defendant did not *actually* disengage these Leads/clients. In reality, Defendant only disengaged the Leads through Plaintiff's online web portal so as to not be charged for the Leads."

g. paragraph 18 of your Petition that "Defendant continued to pursue multiple Leads

22

it had "disengaged" (i.e., continued representing the clients associated with such Leads and even settled claims for some of these clients)."

h.   paragraph 19 of your Petition, that "Defendant falsely represented to Plaintiff that these Leads had been disengaged with the intent that Plaintiff rely on such representations and not charge Defendant for the Leads";

i.   paragraph 20  of your Petition, that "Plaintiff did, in fact, rely on Defendant's false representations by crediting or refunding the Lead fees back to Defendant's Campaign and not charging Defendant for the Leads";

j.   paragraph 21 of your Petition that "Plaintiff has suffered substantial damages as a result of its reliance on Defendant's false representations";

k.   paragraph 22 of your Petition that "Specifically, Plaintiff has lost in excess of $30,000.00 in Lead fees as a direct result of Defendant's fraudulent representations and actions";

l.   paragraph 23 of your petition that "Defendant's fraudulent acts and omissions, as set forth above, were malicious, oppressive and done in reckless disregard of Plaintiff's rights";

m.   affirmative defense #2 that Quintessa "performed all duties owed under the contract other than any duties which were prevented or excused, and therefore never breached the agreement";

n.   affirmative defense #8 that "Any recovery by Plaintiff is barred by his own improper conduct or "unclean hands," including conduct that caused or contributed to the damages Plaintiff alleges";

o.   affirmative defense #9 that Plaintiff "fail[ed] to reasonably mitigate his alleged losses"; and

p.   affirmative defense #10 that "Defendant has substantially complied with all provisions, duties, and obligations under the contract."

**ANSWER: Quintessa reiterates its objection to Interrogatory #18 as each and every self-styled "subpart" is a wholly separate, discrete inquiry because the factual basis for each response is not logically or factually subsumed within or necessarily related to the primary question.** *See Hansen v. Savage Arms Co.***, No. 17-CV-3002-LTS, 2017 WL 6376342, at \*6–8 (N.D. Iowa Dec. 13, 2017).  Subject to and without waiving said objections, see documents produced pursuant to Quintessa's Rule 26(a)(1) disclosures.**

19.   For each entity identified in your answer to Interrogatory #1(m), identify each entity that provided leads and/or marketing services to lawyers or law firms and for each, please state:

a.   the name of the entity;

b.   the date that entity first engaged in business;

d.   if applicable, the date that entity last provided services;

e.   for each entity, whether it was ever alleged by anyone that you failed to provide the contracted services in any capacity along with a detailed description of the allegation;

f.   for each allegation identified in (e), whether any legal action(s) was (were) commenced as a result;

g.   for each, identify any communication that dealt with that entity's qualifying of

leads, or failing to qualify leads;

h.      for each, identify any communication that dealt with the entity's handling of disengagements;

i.      for each, identify any wherein the entity alleged the contracted with lawyer or law firm improperly or fraudulently disengaged leads; and

j.      describe in detail the basis for the entity's allegation identified in (i).

**ANSWER: Quintessa objects to Interrogatory #19 as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues. Furthermore, the burden in fully responding to Interrogatory #19 outweighs its likely benefit.**

**SUPPLEMENTAL ANSWER: Quintessa objects to Interrogatory #19 as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues. Furthermore, the burden in fully responding to Interrogatory #19 outweighs its likely benefit. Pursuant to the Court's ruling, Quintessa states:**

**a.      The following entities have provided marketing services to lawyers on or after April 20, 2020: Quintessa LLC, Quintessa Concepts LLC, and Quintessa Intake LLC. Each entity is owned by Lauren Mingee. Quintessa LLC is the only entity that provides leads to lawyers. Each is an Oklahoma limited liability company, and all are still active.**

**b.      Quintessa LLC: May 14, 2019**
**Quintessa Concepts LLC: July 27, 2020**
**Quintessa Intake LLC: July 24, 2020**

**d.      Each entity described above is still active.**

**e-f.      Since April 20, 2020, Quintessa LLC was sued on a claim that it failed to provide contracted services in *Hupy v. Abraham SC v. Quintessa LLC*, No. 2:2021-cv-00577 (E.D. Wis.).**

**SECOND SUPPLEMENTAL ANSWER: Quintessa objects to Interrogatory #19 as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues. Furthermore, the burden in fully responding to Interrogatory #19 outweighs its likely benefit. Pursuant to the Court's ruling, Quintessa states:**

**a.      The following entities have provided marketing services to lawyers on or after April 20, 2020: Quintessa LLC, Quintessa Concepts LLC, and Quintessa Intake LLC. Each entity is owned by Lauren Mingee. Quintessa LLC is the only entity that provides leads to lawyers. Each is an Oklahoma limited liability company, and all are still active.**

**b.      Quintessa LLC: May 14, 2019**
**Quintessa Concepts LLC: July 27, 2020**
**Quintessa Intake LLC: July 24, 2020**

24

d.  **Each entity described above is still active.**

e-f.  **Since April 20, 2020, Quintessa LLC was sued on a claim that it failed to provide contracted services in *Hupy v. Abraham SC v. Quintessa LLC*, No. 2:2021-cv-00577 (E.D. Wis.).**

g.  **Quintessa states please see the documents produced in response to Request for Production No. 9.**

h.  Quintessa states please see the documents produced in response to Request for Production No. 9.

i.  **Quintessa states please see the documents produced in response to Request for Production No. 9.**

j.  **Quintessa states please see the documents produced in response to Request for Production No. 9.**

**THIRD SUPPLEMENTAL ANSWER: Pursuant to the Court's ruling, Quintessa states:**

a.  **The following entities have provided marketing services to lawyers on or after April 20, 2020: Quintessa LLC, Quintessa Concepts LLC, and Quintessa Intake LLC. Each entity is owned by Lauren Mingee. Quintessa LLC is the only entity that provides leads to lawyers. Each is an Oklahama limited liability company, and all are still active.**

b.  **Quintessa LLC: May 14, 2019
Quintessa Concepts LLC: July 27, 2020
Quintessa Intake LLC: July 24, 2020**

d.  **Each entity described above is still active.**

e-f.  **Since April 20, 2020, Quintessa LLC was sued on a claim that it failed to provide contracted services in *Hupy v. Abraham SC v. Quintessa LLC*, No. 2:2021-cv-00577 (E.D. Wis.).**

g.  **Quintessa states please see the documents produced in response to Request for Production No. 9.**

h.  Quintessa states please see the documents produced in response to Request for Production No. 9.

i.  **Quintessa states please see the documents produced in response to Request for Production No. 9.**

k.  **Quintessa states please see the documents produced in response to Request**

**for Production No. 9.**

20.     For each individual identified in your answer to Interrogatory #1(l), identify any sole proprietorship wherein that individual provided leads and/or marketing services to lawyers or law firms and for each, please state:

a.      the name of the sole proprietorship;

b.      the date that sole proprietorship first engaged in business;

d.      if applicable, the date that sole proprietorship last provided services;

e.      for each entity, whether it was ever alleged by anyone that you failed to provide the contracted services in any capacity along with a detailed description of the allegation;

f.      for each allegation identified in (e), whether any legal action(s) was (were) commenced as a result;

g.      for each, identify any communication that dealt with that sole proprietorship's qualifying of leads, or failing to qualify leads;

h.      for each, identify any communication that dealt with the sole proprietorship's handling of disengagements;

i.      for each, identify any wherein the sole proprietorship alleged the contracted with lawyer or law firm improperly or fraudulently disengaged leads; and

j.      describe in detail the basis for the sole proprietorship's allegation identified in (i).

**ANSWER: Quintessa objects to Interrogatory #20 as it is irrelevant and not proportional to the needs of the case considering the amount in controversy and the importance of the discovery in resolving the issues.   Furthermore, the burden in fully responding to Interrogatory #20 outweighs its likely benefit.**

**SUPPLEMENTAL ANSWER: Since April 20, 2020, Lauren Mingee has not owned or operated any sole proprietorship wherein she provided leads and/or marketing services to lawyers or law firms.**

26

Respectfully submitted,

KHAZAELI WYRSCH, LLC

/s/ James R. Wyrsch
James R. Wyrsch, #53197
911 Washington Avenue, Suite 211
St. Louis, Missouri 63101
james.wyrsch@kwlawstl.com
Phone No. (314) 288-0777
Fax No. (314) 400-7701

*Attorney for Quintessa LLC and Lauren Mingee*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, on behalf of Defendant Quintessa LLC, I verify under penalty of perjury that the foregoing responses to Interrogatories are true and correct to the best of my knowledge and belief.

Executed on April 1, 2022.

Lauren Mingee

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned affirms that on April 1, 2022, this document was served via electronic mail to all counsel of record for ERB Legal Investments, LLC.

/s/ James R. Wyrsch